## DECLARATION OF LESLIE ANDRADE

I, Leslie Andrade, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.   I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Ave., Phoenix, AZ 85021.  I have been employed by GDIT in this position since August of 2015.

3.      I voluntary spoke with Kimberley Dempster Neilio, counsel for GDIT, with respect to the issues set forth in this Declaration.  She informed me that I was not required to speak with her and that I could end our conversation at any time. She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.      I have received training on GDIT's timekeeping policies and procedures multiple times each year since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.      I am a full-time employee.  I currently work 5:15am – 1:45pm, Monday – Friday. Regardless of the shift I work, I typically arrive at the call center about 5-minutes before my shift is scheduled to begin, sometimes less than 5-minutes.  I do not sit down at my desk until 1-2 minutes before my shift starts.

8.     I store my personal items in a locker provided by GDIT.  I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access.  All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.     After I sit down at my desk, the next thing I do is log onto my computer using my ID and password.  Generally, I do not have to boot up or turn on my computer, and instead just have to move the mouse to wake it up from "sleep" mode and log in.

10.     Occasionally, I am not able to log onto my computer because I have to change my password or have other system issues that prevent me from logging in.  This has happened only about 3 times in the last year.  When this happens, I have to notify a supervisor, who will assist me with logging onto the computer.  I use the time I first attempted to log onto the computer as my start time and am paid for that time.

11.     Once I log onto my computer, the Electronic Timekeeping System (ETS) system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen.  ETS is where I record my time.  At the end of the day, I am required to record my total time worked each day in the ETS system.  I regularly review the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

12.     I am a full-time employee.  Each day in which I work more than four hours, I take an unpaid meal break.  I take a full, 30-minute uninterrupted meal break away from my desk and work area.

13.     Three minutes before my shift ends, I enter an AUX code on the phone that makes it inactive to prevent any further incoming calls.  Once my last call is finished, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working.  I deduct my unpaid meal break if I took one.  In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

14.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day.  I am also trained how to calculate my time manually in tenth-hour increments.

15.     I restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift.  To restart my computer, I select the option that says restart.  I watch to make sure the restart occurs and then walk away.  The restart doesn't take long – just a matter of seconds.

16.     The system automatically captures the time I restart my computer at the end of the day into ETS.  I review the time the system records when I restarted my computer when I work my next shift.  I believe it always accurately reflects the time I restarted my computer.

17.     If the computer time stamp system records more total time worked based on my log on and restart time than I record in ETS, the system prompts me to check my time and record the additional time.  On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and restart time, the system allows me to input that time and save my time card.  If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

18.     My supervisor reviews and approves my time card on a weekly basis.  My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes.  My supervisor cannot actually make any changes to my timecard.  If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

19.     Sometimes, I have to attend classroom training.  When I attend training, I log onto a training computer.  When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

20.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps.  Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system.  In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

21.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

22.     Even before the company began capturing our start and end of day time stamps via the log on and restart of the computer, I was still responsible for accurately recording my hours worked.  During that time, I was instructed to record all time worked, but I did not always do so.  It was my understanding that my work day started when I actually logged onto the computer, and I did not always include the time I spent turning on my computer, checking e-mails and logging into NGD.  I estimate that I spent 2-3 minutes per shift turning on my computer, checking e-mails and logging into NGD that I did not include in my hours worked.

23.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones.  I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked.  I have never been asked to work off-the-clock, nor have I done so.

24.     I have not worked off the clock since the company began using computer time stamps to validate the time that I was self-reporting and recording in the electronic time keeping system.  I have recorded all the time that I have worked.  I believe I have been properly paid for all hours worked since the company began using computer time stamps to validate the time that I was self-reporting and recording in the electronic time keeping system.

25.     I have been paid overtime compensation whenever I worked more than 40-hours in a week.

26.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 19, 2018 in Maricopa County, Arizona.

Leslie Andrade

## DECLARATION OF PILAR ARTIAGA

I, Pilar Artiaga, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position since September 2008.

3.      I voluntary spoke with Aaron Lloyd, counsel for GDIT, with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could end our conversation at any time. He also informed me that I would not receive any benefit for agreeing to speak with him and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with him and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.      I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies approximately once or twice a year since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.      I typically arrive at the call center 5 minutes before my shift is scheduled to begin to go to my locker.  I do not sit down at my desk until my shift starts.

8.      I store my personal items in a locker provided by GDIT. I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password. Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     Occasionally, I am not able to log onto my computer because I have to change my password or have other system issues that prevent me from logging in. This has happened 2-3 times in the last one years. When this happens, I have to notify a supervisor, who will assist me with logging onto the computer, and I use the time I first attempted to log onto the computer as my start time.

11.     Once I log onto my computer, I am able to navigate to the Electronic Timekeeping System (ETS) system, which is where I record my time. At the end of the day, I am required to record my total time worked each day in the ETS system.

12.     The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen. I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.     Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.     At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working. I deduct my unpaid meal break if I took one. In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

15.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day. I am also trained how to calculate my time manually in tenth-hour increments.

16.     I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. To log off or restart my computer, I select the option that says log off or restart, then make sure the process has started before I leave for the day. I do not wait for my computer to actually complete the log off or restart before leaving for the day.

17.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS. I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     My supervisor reviews and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

20.     Sometimes, I have to attend classroom training. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

21.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

22.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

23.     Even before the company began capturing our start and end of day time stamps via the log on and log-off/restart of the computer, I was still responsible for accurately recording my hours worked. During that prior time period, I was also instructed to record all time worked. I was trained that my day started as soon as sat down at my computer and attempted to turn on my computer. Prior to the start of my shift, I would go to my locker. I would not sit down at my work station until my shift was scheduled to start. I recorded my start time as the time I sat down at my work station and attempted to log onto my computer or my phone, whichever occurred first. I did not perform any work prior to logging onto my computer and my phone.

24.     During that time period, at the end of the day, I recorded my end time as the time I logged off or restarted my computer or logged off my phone, whichever occurred last. I did not perform any work after logging off or restarting my computer and logging off my phone.

3

25.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones.  I have not felt the need to come in prior to my shift to turn on my computer or get ready to be on the phones.

26.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked.  I have never been asked to work off-the-clock, nor have I done so.

27.     I have not worked off the clock during the term of my employment.  I have recorded all the time that I have worked during the term of my employment.  I believe I have been properly paid for all hours worked during the term of my employment.

28.     I have been paid overtime compensation whenever I worked more than 40 hours in a week.

29.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 1⁄8, 2018, in Maricopa County, Arizona.


_____
Pilar Artiaga

## <u>DECLARATION OF RANDALL BAKER</u>

I, Randall Baker, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.   I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Ave., Phoenix, AZ 85021.  I have been employed by GDIT in this position since January of 2011.

3.      I voluntary spoke with Kimberley Dempster Neilio, counsel for GDIT, with respect to the issues set forth in this Declaration.  She informed me that I was not required to speak with her and that I could end our conversation at any time. She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.      I receive training on GDIT's timekeeping policies on at least an annual basis since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.      I typically arrive at the call center about 5-minutes before my shift is scheduled to begin.  I do not sit down at my desk until right when my shift starts.

8.      GDIT provides lockers in which employees can store personal items, but I leave my things in my vehicle.  I am not allowed to have any paper or personal items at my desk due to

the sensitive nature of the information to which I have access.  All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password.  Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.      Occasionally, I have been unable to log onto my computer because I had to change my password or had other system issues that prevented me from logging in.  This has happened only about one time in the last year.  It doesn't happen very often.  When this has happened, I have notified a supervisor, who has assisted me with logging onto the computer.  I have always used the time I first attempted to log onto the computer as my start time.

11.      Once I log onto my computer, the Electronic Timekeeping System (ETS) system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen.  ETS is where I record my time.  At the end of the day, I am required to record my total time worked each day in the ETS system.  I review the time the system records when I log into my computer each day and believe it accurately reflects the time I log into my computer.

12.      Each day in which I work more than four hours, I take an unpaid meal break.  I take a full, 30-minute uninterrupted meal break away from my desk and work area.

13.      Three minutes before my shift ends, I enter an AUX code on the phone that makes it inactive to prevent any further incoming calls.  I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working.  I deduct my unpaid meal break if I took one.  In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

14.      My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day.  I am also trained how to calculate my time manually in tenth-hour increments.

15.      I restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift.  I also log off of the phone system.  To restart my computer, I select the option that says restart.  I observe that the computer is restarting and then walk away.  This takes just a few seconds.

16.      The system automatically captures the time I restart my computer at the end of the day into ETS.  I regularly review the time the system records when I restart my computer and believe it always accurately reflects the time I restart my computer.

17.      If the computer time stamp system records more total time worked based on my log on and restart time than I record in ETS, the system prompts me to check my time and record

the additional time. On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and restart time, the system allows me to input that time and save my time card. If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference

18.    My supervisor reviews my time card pretty much on a daily basis and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

19.    Sometimes, I have to attend classroom training. When I attend training, I log onto a training computer, which also automatically enters my start time into ETS. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

20.    On just a few occasions, during very busy times, I have participated in "hot seating." Hot seating occurs when I am not assigned to a specific computer, but instead have to wait to be assigned to the next available computer. When I am hot seating, I arrive at the hot seating area and sign in to record the time I arrived. I have never had to wait more than a minute or two in line to sign in. I have always used the time I arrived to the hot seating area as my start time.

21.    Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked. As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

22.    Even before the company began capturing our start and end of day time stamps via the log on restart of the computer, I was still responsible for accurately recording my hours worked. During that prior time period, I was also instructed to record all time worked. I was trained that my day started as soon as sat down at my computer and attempted to turn on my computer. I would not sit down at my work station until my shift was scheduled to start. I recorded my start time as the time I sat down at my work station and attempted to log onto my computer or my phone, whichever occurred first. I did not perform any work prior to logging onto my computer and my phone. I was never confused about when my work day started or ended.

23.     During that time period, at the end of the day, I recorded my end time as the time I logged off or restarted my computer or logged off my phone, whichever occurred last. I did not perform any work after logging off or restarting my computer and logging off my phone.

24.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones. I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked. I have never been asked to work off-the-clock, nor have I done so.

25.     I have recorded all the time that I have worked. I believe I have been properly paid for all hours worked.

26.     I have been paid overtime compensation whenever I worked more than 40-hours in a week.

27.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 19, 2018 in Maricopa County, Arizona.

Randall Baker

## DECLARATION OF KAREN BECKER

I, Karen Becker, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position since December 1, 2008.

3.      I voluntary spoke with Dana Hooper, counsel for GDIT, with respect to the issues set forth in this Declaration.  She informed me that I was not required to speak with her and that I could end our conversation at any time.  She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek.  It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Federally Facilitated Marketplaces.

5.      I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies on a regular basis since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.      I typically arrive at the call center about 10 minutes before my shift is scheduled to begin to drop off my items in my locker, get my white board and head set, and then go to the restroom.  I sit at my desk for about 2 minutes before I log into my computer to start my shift.

1

8.      I store my personal items in a locker provided by GDIT.  I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access.  All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password.  Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     I have never had any issues logging onto my computer, only if I forget or reset my password.

11.     Once I log onto my computer, I pull up Empower, I also pull up Radmin, email, and NGD.  If I did not do my time card the day before, I pull up Electronic Timekeeping System (ETS) system, which is where I record my time.  At the end of the day, I am required to record my total time worked each day in the ETS system.

12.     The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen.  I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.     Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.     At the end of the day, I usually go into auxiliary mode so that incoming calls no longer come in, then I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working.  I deduct my unpaid meal break if I took one.  In entering my total time worked, I include the allotted 3 minutes of time to include how long it will take me to finish my time card and restart the computer.  If it is slow at the end of the day, sometimes I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working.  I deduct my unpaid meal break if I took one.  In entering my total time worked, I include the allotted 3 minutes of time to include how long it will take me to finish my time card and restart the computer.  On those slow days, then I go into auxiliary mode of the phone to stop incoming calls.  Sometimes I go into ETS the next morning to make any needed adjustments.

15.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day.  I am also trained how to calculate my time manually in tenth-hour increments.

16.     I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift.  To log off or restart my computer, I select the option that says log off or restart.  I wait for my computer to actually perform the log off or restart before leaving for the day.

2

17.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS.  I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time.  The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and log-off/restart time, the system allows me to input that time and save my time card.  If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

20.     My supervisor reviews and approves my time card on a regular basis.  My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes.  My supervisor cannot actually make any changes to my timecard.  If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

21.     Sometimes, I have to attend classroom training.  When I attend training, I log onto a training computer, which also automatically enters my start time into ETS.  When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

22.     Sometimes, during very busy times, I participate in "hot seating."  Hot seating occurs when I am not assigned to a specific computer, but instead have to wait to be assigned to the next available computer.  When I am hot seating, [I log into the phone system in the hot seating area using my unique code to record the time I arrived.]  I have never had to wait more than a minute or two in line to log into the phone system.  When I am hot seating, I use the time I arrived to the hot seating area as my start time.

23.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps.  Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system.  In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

24.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

25.     Even before the company began capturing our start and end of day time stamps via the log on and log-off/restart of the computer, I was still responsible for accurately recording my hours worked. *During that prior time period, I was also instructed to record all time worked. I was trained that my day started as soon as sat down at my computer and attempted to turn on my computer. Prior to the start of my shift, I would drop off items in my locker, use the restroom before I went to my work station. I would not sit down at my work station until my shift was scheduled to start. I recorded my start time as the time I sat down at my work station and attempted to log onto my computer. I did not perform any work prior to logging onto my computer.*

26.     During that time period, at the end of the day, I recorded my end time as the time I logged off or restarted my computer. I did not perform any work after restarting my computer.

27.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones.

28.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked. I have never been asked to work off-the-clock, nor have I done so.

29.     I have not worked off the clock. I have recorded all the time that I have worked. I believe I have been properly paid for all hours worked.

30.     I have been paid overtime compensation whenever I worked more than 40 hours in a week.

31.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June _18_, 2018, in Maricopa County, Arizona.


_Karen Becker_
Karen Becker

4

## DECLARATION OF BRANDI BRANUM

I, Brandi Branum, declare and state as follows:

1.     I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.     I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position since August 26, 2016.

3.     I voluntary spoke with Dana Hooper, counsel for GDIT, with respect to the issues set forth in this Declaration.  She informed me that I was not required to speak with her and that I could end our conversation at any time.  She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek.  It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.     As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare and the Federally Facilitated Marketplaces.

5.     I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies quarterly since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.     Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.     I typically arrive at the call center about 10 minutes before my shift is scheduled to begin to stop at my locker and get a drink.  Then, I go to my desk just before my shift is scheduled to begin.

8.      I store my personal items in a locker provided by GDIT. I am not allowed to have any paper or, but can have some personal items at my desk, such as a laminated photo, due to the sensitive nature of the information to which I have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password. Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     I have never had any issues logging onto my computer.

11.     Once I log onto my computer, I log into NGD, Empower, and email. At the end of the day, I am required to record my total time worked each day in the ETS system.

12.     The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen. I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.     Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.     At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working. I deduct my unpaid meal break if I took one. In entering my total time worked, I include what time I will finish working based on how long it will take me to finish my time card and restart the computer; we are given 2 minutes to account for this time.

15.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day. I am also trained how to calculate my time manually in tenth-hour increments.

16.     I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. To log off or restart my computer, I select the option that says log off or restart, then I wait until the computer begins restarting. I do not wait for my computer to actually perform the log off or restart before leaving for the day.

17.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS. I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and

record the additional time.  The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and log-off/restart time, the system allows me to input that time and save my time card.  If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

20.     My supervisor reviews and approves my time card on a daily basis.  My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes.  My supervisor cannot actually make any changes to my timecard.  If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

21.     Sometimes, I have to attend classroom training.  When I attend training, I log onto a training computer, but my start time when I logged into my regular computer is still captured in ETS.  When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.  When I log out or restart the training computer, it seems like I log out for the day into ETS, but when I go back to my regular computer and I log out at the end of the day, ETS correctly captures the entire day of hours worked.

22.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system.  In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

23.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

24.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones.

25.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked.  I have never been asked to work off-the-clock, nor have I done so.

26.     I have not worked off the clock.  I have recorded all the time that I have worked.  I believe I have been properly paid for all hours worked.

27.    I have been paid overtime compensation whenever I worked more than 40 hours in a week.

28.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 18, 2018, in Maricopa County, Arizona.

Brandi Branum
Brandi Branum

4

## DECLARATION OF BRITTANY CANEZ

I, Brittany Canez, declare and state as follows:

1.     I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.     I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Ave., Phoenix, AZ 85021.  I have been employed by GDIT in this position since December of 2016.

3.     I voluntary spoke with Kimberley Dempster Neilio, counsel for GDIT, with respect to the issues set forth in this Declaration.  She informed me that I was not required to speak with her and that I could end our conversation at any time.  She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.     As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.     I have received training on GDIT's timekeeping policies on more than one occasion since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.     Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.     I typically arrive at the call center right before my shift is scheduled to begin.  I do not sit down at my desk until my shift starts.

8.     I store my personal items in a locker provided by GDIT.  I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I

1

have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.     After I sit down at my desk, the next thing I do is log onto my computer using my ID and password. Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in. Once logged into my computer, I log into NGD, which automatically logs me into the phone system.

10.     Occasionally, I am not able to log onto my computer because I have to change my password or have other system issues that prevent me from logging in. This has happened once or twice in the last year. When this happens, I have to notify a supervisor, who will assist me with logging onto the computer. I use the time I first attempted to log onto the computer as my start time and I am paid for that time.

11.     Once I log onto my computer, the Electronic Timekeeping System (ETS) system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen. ETS is where I record my time. At the end of the day, I am required to record my total time worked each day in the ETS system. Each day I work, I review the time the system records for my log on time and believe it accurately reflects the time I logged into my computer.

12.     Each day, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area. I also take two paid 15-minute breaks when I work an 8-hour shift, which I usually do as a full-time employee.

13.     Three minutes prior to the end of my shift, I enter an AUX code on my phone that makes it inactive to prevent any further incoming calls. I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working. I deduct my unpaid meal break if I took one. In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

14.     I use my desktop time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day. I am also trained how to calculate my time manually in tenth-hour increments.

15.     I restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. To restart my computer, I select the option that says restart. I watch the restart occur, which takes only a few seconds, then depart.

16.     The system automatically captures the time I restart my computer at the end of the day into ETS. I regularly review the time the system records when I restart my computer and believe it accurately captures the time I restart my computer.

17.     If the computer time stamp system records more total time worked based on my log on and restart time than I record in ETS, the system prompts me to check my time and record

2

the additional time. On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and restart time, the system allows me to input that time and save my time card. If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

18.     My supervisor reviews my time card daily and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

19.     Sometimes, I have to attend classroom training. When I attend training, I log onto a training computer, which also captures my time in ETS. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

20.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked. As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

21.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones. I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked. I have never been asked to work off-the-clock, nor have I done so.

22.     Throughout my employment, I have recorded all the time that I have worked and believe I have been properly paid for all hours worked. I have been paid overtime compensation whenever I worked more than 40-hours in a week.

23.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 19, 2018 in Maricopa County, Arizona.

Brittany Canéz

## DECLARATION OF ELIZABETH CARDENAS

I, Elizabeth Cardenas, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position since September 2013.

3.      I voluntary spoke with Aaron Lloyd, counsel for GDIT, with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could end our conversation at any time.  He also informed me that I would not receive any benefit for agreeing to speak with him and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with him and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare or the Federally Facilitated Marketplaces.

5.      I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies annually since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.      I typically arrive at the call center 5 minutes before my shift is scheduled to begin to wait in the common area until just before my shift is scheduled to begin.  I do not sit down at my desk until my shift starts.

1

8.      I store my personal items in a locker provided by GDIT.  I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password.  Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     Occasionally, I am not able to log onto my computer because I have to change my password or have other system issues that prevent me from logging in.  This has happened approximately 2 times in the last one year.  When this happens, I have to notify a supervisor, who will assist me with logging onto the computer, and I use the time I first attempted to log onto the computer as my start time.

11.     Once I log onto my computer, I am able to navigate to the Electronic Timekeeping System (ETS) system, which is where I record my time.  At the end of the day, I am required to record my total time worked each day in the ETS system.

12.     The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen.  I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.     Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.     At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working.  I deduct my unpaid meal break if I took one.  In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

15.     I am trained how to calculate my time manually in tenth-hour increments.

16.     I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift.  To log off or restart my computer, I select the option that says log off or restart, I wait to make sure the log off process has started and then walk away.  I do not wait for my computer to actually perform the log off or restart before leaving for the day.

17.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS.  I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     My supervisor reviews and approves my time card on a weekly basis.   My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor always asks me to make the changes. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

20.     Sometimes, I have to attend classroom training. When I attend training, I understand that I am required to record all time I spend in training.

21.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

22.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

23.     Even before the company began capturing our start and end of day time stamps via the log on and log-off/restart of the computer, I was still responsible for accurately recording my hours worked.  During that prior time period, I was also instructed to record all time worked.  I was trained that my day started as soon as sat down at my computer and attempted to turn on my computer.  I would sit down at my work station a few minutes before my shift was scheduled to start, but I did not log onto to the computer until my shift started.  I recorded my start time as the time I attempted to log onto my computer or my phone, whichever occurred first. I did not perform any work prior to logging onto my computer and my phone.

24.     During that time period, at the end of the day, I recorded my end time as the time I logged off or restarted my computer or logged off my phone, whichever occurred last.  I did not perform any work after logging off or restarting my computer and logging off my phone.

25.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones. I have not felt the need to come in prior to my shift to turn on my computer or get ready to be on the phones.

3

26.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked.  I have never been asked to work off-the-clock, nor have I done so.

27.     I have not worked off the clock during the term of my employment.  I have recorded all the time that I have worked during the term of my employment.  I believe I have been properly paid for all hours worked during the term of my employment.

28.     I have been paid overtime compensation whenever I worked more than 40 hours in a week.

29.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 13, 2018, in Maricopa County, Arizona.


_ECardenas_
Elizabeth Cardenas

4

## DECLARATION OF ANA LAURA CARREON CARRANZA

I, Ana Laura Carreon Carranza, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.   I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position since August 2016.

3.      I voluntary spoke with Aaron Lloyd, counsel for GDIT, with respect to the issues set forth in this Declaration. He informed me that I was not required to speak with him and that I could end our conversation at any time. He also informed me that I would not receive any benefit for agreeing to speak with him and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with him and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.      I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies every 4 months since the start of my employment. I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.      I typically arrive at the call center 1-2 minutes before my shift is scheduled to begin to drop off my lunch in the breakroom.  I do not sit down at my desk until my shift starts.

1

8.      I store my personal items in my vehicle or in a clear plastic bag. I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password. Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.      Occasionally, I am not able to log onto my computer because I have to change my password or have other system issues that prevent me from logging in. This has happened approximately one time in the last year. When this happens, I have to notify a supervisor, who will assist me with logging onto the computer, and I use the time I first attempted to log onto the computer as my start time.

11.      Once I log onto my computer, I am able to access the Electronic Timekeeping System (ETS) system, which is where I record my time. At the end of the day, I am required to record my total time worked each day in the ETS system.

12.      The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen. I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.      Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.      At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working. I deduct my unpaid meal break if I took one. In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

15.      My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day. I am also trained how to calculate my time manually in tenth-hour increments.

16.      I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. To log off or restart my computer, I select the option that says log off or restart. I do wait for my computer to actually perform the log off or restart before leaving for the day which takes about 2 minutes.

17.      The system automatically captures the time I log off or restart my computer at the end of the day into ETS. I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and log-off/restart time, the system allows me to input that time and save my time card. If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

20.     My supervisor reviews and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

21.     Sometimes, I have to attend classroom training. When I attend training, I log onto a training computer, which also automatically enters my logoff time into ETS. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

22.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

23.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

24.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones. I have not or felt the need to come in prior to my shift to turn on my computer or get ready to be on the phones.

25.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked. I have never been asked to work off-the-clock, nor have I done so.

26.     I have not worked off the clock during the term of my employment. I have recorded all the time that I have worked during the term of my employment. I believe I have been properly paid for all hours worked during the term of my employment.

27.     I have been paid overtime compensation whenever I worked more than 40 hours in a week.

28.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June ⎸⎸ , 2018, in Maricopa County, Arizona.


Ana Laura Carreon Carranza

## DECLARATION OF SARAHI CRUZ

I, Sarahi Cruz, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position since September 26, 2016.

3.      I voluntary spoke with Dana Hooper, counsel for GDIT, with respect to the issues set forth in this Declaration.  She informed me that I was not required to speak with her and that I could end our conversation at any time. She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Federally Facilitated Marketplaces.

5.      I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies on a regular basis if there are changes since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.      I typically arrive at the call center about 10 minutes before my shift is scheduled to begin and go to my locker to put my items away.  Then, I go to my desk.  I do not sit down at my desk until my shift starts.

1

8.     I store my personal items in a locker provided by GDIT.  I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access.  All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.     After I sit down at my desk, the next thing I do is log onto my computer using my ID and password.  Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     I have never had any issues logging onto my computer.

11.     Once I log onto my computer, I pull up my NGD, Empower and then emails.  I go to my Electronic Timekeeping System (ETS) system, which is where I record my time, at the end of the day.  I am required to record my total time worked each day in the ETS system.

12.     The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen.  I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.     Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.     At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working.  I deduct my unpaid meal break if I took one. In entering my total time worked, I include what time I will finish working based on how long it will take me to finish my time card and restart the computer.  We are given 2 minutes for that time.

15.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day.  I am also trained how to calculate my time manually in tenth-hour increments.

16.     I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift.  To log off or restart my computer, I select the option that says log off or restart.  I wait for my computer to actually perform the log off or restart before leaving for the day.

17.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS.  I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and

record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and log-off/restart time, the system allows me to input that time and save my time card. If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

20.     My supervisor reviews and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

21.     Sometimes, I have to attend classroom training. When I attend training, I log onto a training computer, which also automatically enters my start time into ETS. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

22.     Sometimes, during very busy times, I participate in "hot seating." Hot seating occurs when I am not assigned to a specific computer, but instead have to wait to be assigned to the next available computer. When I am hot seating, I log into the phone system in the hot seating area using my unique code to record the time I arrived. I have never had to wait more than a minute or two to log into the phone system]. When I am hot seating, I use the time I arrived to the hot seating area as my start time.

23.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

24.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

25.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phone, only about 2 minutes before to get to my desk on time.

26.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked.  I have never been asked to work off-the-clock, nor have I done so.

27.     I have not worked off the clock.  I have recorded all the time that I have worked.  I believe I have been properly paid for all hours.

28.     I have been paid overtime compensation whenever I worked more than 40 hours in a week.

29.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 18, 2018, in Maricopa County, Arizona.


Sarahi Cruz

4

## DECLARATION OF ANGELICA DELGADILLO

I, Angelica Delgadillo, declare and state as follows:

1.     I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.     I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Ave., Phoenix, AZ 85021.  I have been employed by GDIT in this position since September of 2013.

3.     I voluntary spoke with Kimberley Dempster Neilio, counsel for GDIT, with respect to the issues set forth in this Declaration.  She informed me that I was not required to speak with her and that I could end our conversation at any time.  She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40-hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.     As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare or the Federally Facilitated Marketplaces.  I primarily take Medicare calls, but am trained to take both types.

5.     I have received training on GDIT's timekeeping policies on a regular basis – approximately every 6-months or even more frequently – since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.     Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.     I currently work a shift that starts at 6:00am.  My shift can change when there is a shift bid.  I typically arrive at the call center about 5-minutes before my shift is scheduled to

1

begin. There is not a reason to arrive much earlier. I typically stop at my locker and then go to my desk. At that point it is generally time for me to log in and start my shift. I do not sit down at my desk until my shift starts.

8.      I store my personal items in a locker provided by GDIT. I am not allowed to have any paper, pens or personal items at my desk due to the sensitive nature of the information to which I have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password. Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.      Occasionally, I am not able to log onto my computer because I have to change my password, I forget my password or I have other system issues that prevent me from logging in. This has happened only about 3 – 4 times in the last year. When this happens, I have to notify a supervisor, who will assist me with logging onto the computer. Any time this has happened, I have used the time I first attempted to log onto the computer as my start time and I have been paid for that time.

11.      Once I log onto my computer, the Electronic Timekeeping System (ETS) system, where I record my time, automatically enters the time I log into my computer and it is displayed on the ETS screen. I review the time the ETS records daily and believe the system accurately reflects the time I log into my computer. At the end of the day, I am required to record my total time worked each day in the ETS system.

12.      Each day in which I work, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

13.      About 3-minutes before me shift ends, I enter an AUX code on the phone that makes it inactive to prevent any further incoming calls. Once I finish my last call, I go into ETS and review my time card. I then enter my total time worked and allocate it to the appropriate project and task on which I am working. I deduct my unpaid meal break if I took one. I sometimes rely on the desktop time calculator to calculate my time worked. It allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day. I am also trained on how to calculate my time manually in tenth-hour increments. In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

14.      I restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. To restart my computer, I select the option that says restart. By the time I am ready to walk away from my desk, the restart has occurred. It takes only a few seconds.

15.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS.  I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

16.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time.  The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

17.     On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and log-off/restart time, the system allows me to input that time and save my time card.  If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

18.     My supervisor reviews my time card on a daily basis and approves my time card on a weekly basis – on Fridays.  My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes.  My supervisor cannot actually make any changes to my timecard.  If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

19.     Sometimes, I have to attend classroom training.  When I attend training, I log onto a training computer, which also automatically enters my start time into ETS.  When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

20.     I have participated in "hot seating," but it was years ago.  Hot seating occurs when I am not assigned to a specific computer, but instead have to wait to be assigned to the next available computer.  For me, this happened when I volunteered for overtime hours.  When I did hot seating, I arrived at the hot seating area and signed in on a document to record the time I arrived.  I never had to wait more than a minute or two in line to sign in on the sign in sheet.  When I did hot seating, I used the time I arrived to the hot seating area as my start time.  I haven't participated in hot seating for a couple of years.

21.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps.  Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system.  In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

22.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of

my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

23.    Even before the company began capturing our start and end of day time stamps via the log on and restart of the computer, I was still responsible for accurately recording my hours worked.  During that prior time period, I was also instructed to record all time worked.  I was trained that my day started as soon as sat down at my computer and attempted to turn on my computer.  Even during that time, I arrived at the call center just prior to the start of my shift.  I would not sit down at my work station until my shift was scheduled to start.  I recorded my start time as the time I sat down at my work station and attempted to log onto my computer or my phone, whichever occurred first.  I did not perform any work prior to logging onto my computer and my phone.

24.    During that time period, at the end of the day, I recorded my end time as the time I logged off or restarted my computer or logged off my phone, whichever occurred last.  I did not perform any work after logging off or restarting my computer and logging off my phone.

25.    I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones.

26.    I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked.  I have never been asked to work off-the-clock, nor have I done so.

27.    I have recorded all the time that I have worked.  I believe I have been properly paid for all hours worked throughout my employment GDIT.  I have access to my electronic wage statements and can review them at the call center and also from my home.

28.    I have been paid overtime compensation whenever I worked more than 40-hours in a week.

29.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 18, 2018 in Maricopa County, Arizona.

Angelica Delgadillo

## DECLARATION OF CRAIG DEMOUEY

I, Craig Demouey, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position since November 9, 2015.

3.      I voluntary spoke with Dana Hooper, counsel for GDIT, with respect to the issues set forth in this Declaration. She informed me that I was not required to speak with her and that I could end our conversation at any time. She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare or the Federally Facilitated Marketplaces.

5.      I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies on a regular basis since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  GDIT changed the system to capture time through the phone, not the computer.

7.      I typically arrive at the call center about 30 minutes before my shift is scheduled to begin to put my lunch away and use the restroom.  I sit down at my desk about 2-3 minutes before my shift starts.

8.      I am not allowed to have any paper or pens at my desk due to the sensitive nature of the information to which I have access. For personal items, I must have a transparent bag. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password. Generally, I do not have to boot up or turn on my computer, and instead just the computer is on and I need to enter CTRL ALT DELETE.

10.     I have had some issues logging onto my computer, such as a password issue or technology.

11.     Once I log onto my computer, I first pull up email, NGD and then look at Empower. At the end of the day, I go to the Electronic Timekeeping System (ETS) system, which is where I record my time. I am required to record my total time worked each day in the ETS system.

12.     The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen.

13.     Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.     At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked. I deduct my unpaid meal break if I took one. In entering my total time worked, I include what time I will finish working based on how long it will take me to finish my time card and restart the computer.

15.     I am trained how to calculate my time manually in tenth-hour increments and have a chart at my desk to show this.

16.     I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. To log off or restart my computer, I select the option that says log off or restart. I log out of my phone, as the computer is doing the restart process before leaving for the day.

17.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS. I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     My supervisor reviews and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

20.     Sometimes, I have to attend classroom training. When I attend training, I log onto a training computer, my regular computer is tracking my time in ETS. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

21.     Immediately prior to the current timekeeping system, I recorded my time the same way. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

22.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

23.     Even before the company began capturing our start and end of day time stamps via the log on and log-off/restart of the computer, I was still responsible for accurately recording my hours worked. During that prior time period, I was also instructed to record all time worked. I was trained that my day started as soon as sat down at my computer and attempted to turn on my computer. I recorded my start time as the time I sat down at my work station and attempted to log onto my phone. If I logged into my computer to set it up before I logged into my phone, I would spend about 5 minutes doing so.

24.     During that time period, at the end of the day, I recorded my end time as the time I logged off of my phone. Then, I closed my computer programs for about 1-2 minutes and restarted my computer.

25.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones.

26.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked. I have never been asked to work off-the-clock, nor have I done so.

27.     I have not worked off the clock. I have recorded all the time that I have worked. I believe I have been properly paid for all hours worked.

28.     I have been paid overtime compensation whenever I worked more than 40 hours in a week.

29.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 18 , 2018, in Maricopa County, Arizona.

Craig Demouey

## DECLARATION OF ELIZABETH DOSS

I, Elizabeth Doss, declare and state as follows:

1.     I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true. If called upon as a witness I could and would testify as to the truth of the facts below. I give this Declaration freely without payment or coercion of any kind.

2.     I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021. I have been employed by GDIT in this position since August 1, 2016.

3.     I voluntary spoke with Dana Hooper, counsel for GDIT, with respect to the issues set forth in this Declaration. She informed me that I was not required to speak with her and that I could end our conversation at any time. She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration. We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked. I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.     As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.     I have received training on GDIT's timekeeping policies. I have been receiving training on GDIT's timekeeping policies on a regular basis since the start of my employment. I know that I should record all time worked without exception. I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.     Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer. I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer. I also do not – and cannot – perform any work after I restart or log off a GDIT computer. I have had this same understanding throughout my employment at GDIT.

7.     I typically arrive at the call center about 10-20 minutes before my shift is scheduled to begin to wait in the common area until just before my shift is scheduled to begin. I go to my locker to put my items away. I do not sit down at my desk about 1-2 minutes before my shift starts.

8.      I store my personal items in a locker provided by GDIT. I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password. Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     I have never had any issues logging onto my computer. One time I locked myself out, but I logged in on my phone, which accounted for the time I started work. My supervisor also can help me if my computer locks out in this way.

11.     Once I log onto my computer, I open my email, NGD and Empower. At the end of the day, I go to the Electronic Timekeeping System (ETS) system, which is where I record my time. I am required to record my total time worked each day in the ETS system.

12.     The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen. I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.     Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.     At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working. I deduct my unpaid meal break if I took one. In entering my total time worked, I include what time I will finish working based on how long it will take me to finish my time card and restart the computer.

15.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day. I am also trained how to calculate my time manually in tenth-hour increments. Also, there is a sign that shows the increments to help at our desk.

16.     I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. To log off or restart my computer, I select the option that says log off or restart. I wait for my computer to start performing the log off or restart before leaving for the day.

17.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS. I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

2

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and log-off/restart time, the system allows me to input that time and save my time card. If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

20.     My supervisor reviews and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

21.     Sometimes, I have to attend classroom training. When I attend training, I log onto a training computer. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer. No matter what computer I am on at the start of my day, the log in records my start time. No matter what computer I am on at the end of the day, the log out records my end time.

22.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

23.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

24.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones.

25.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked. I have never been asked to work off-the-clock, nor have I done so.

26.     I have not worked off the clock. I have recorded all the time that I have worked. I believe I have been properly paid for all hours worked.

27.     I have been paid overtime compensation whenever I worked more than 40 hours in a week.

28.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 19, 2018, in Maricopa County, Arizona.


Elizabeth Doss

## DECLARATION OF APRIL FENNELL

I, April Fennell, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Ave., Phoenix, AZ 85021.  I have been employed by GDIT in this position since approximately August of 2011.  I was initially hired by Vangent in February of 2010.  I worked on the U.S. Census at that time. As I understand it, GDIT acquired Vangent.

3.      I voluntary spoke with Kimberley Dempster Neilio, counsel for GDIT, with respect to the issues set forth in this Declaration.  She informed me that I was not required to speak with her and that I could end our conversation at any time.  She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.      I believe I have received training on GDIT's timekeeping policies at least annually since around August of 2011.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.      I am a full-time employee and I currently work from 6:45am – 3:15pm. Regardless of the shift I work, I typically arrive at the call center about 30-minutes before my shift is scheduled to begin.  I do this by my own choice.  I usually sit in my car in the parking lot

1

and listen to NPR.  I enter the building about 10-minutes before my shift.  I typically go to the lunch room to drop-off my lunch and then stop at my locker.  I go to my desk about 1-minute before my shift starts and log-in at that time.

8.      I store my personal items in a locker provided by GDIT.  I am not allowed to have any paper or writing implements or my mobile phone at my desk. CSRs can have only limited personal items at their desks due to the sensitive nature of the information to which we have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called Next Generation Desktop ("NGD").

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password.  Generally, I do not have to boot up or turn on my computer, and instead just have to move the mouse to wake it up from "sleep" mode and log in.

10.     Occasionally, I have been unable to log onto my computer because I have needed to change my password or have had other system issues that prevented me from logging in.  This has happened only about twice in the last year.   When this happened, I have notified a supervisor, who has assisted me with logging onto the computer.  Any time this has happened, I used the time I first attempted to log onto the computer as my start time and I was paid for that time.

11.     Once I log onto my computer, the Electronic Timekeeping System (ETS) system, where I record my time, automatically enters the time I log into my computer and it is displayed on the ETS screen.  I review the time the ETS records daily and believe the system accurately reflects the time I log into my computer.  At the end of the day, I am required to record my total time worked each day in the ETS system.

12.     I typically work an 8-hour day.  Each day in which I work more than four hours, I take an unpaid meal break.  I take a full, 30-minute uninterrupted meal break away from my desk and work area.  Employees do not stay at their desks for the unpaid lunch break or for the paid rest breaks.

13.     About 2-minutes before my shift ends, I can enter an AUX code into my phone that makes it inactive to prevent any further incoming calls.  When I complete my last call, close my open windows.  I then open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working.  I record my unpaid meal break if I took one. In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.  I then log out of NGD and restart my computer.

14.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day.  I don't usually rely on the calculator.  I am also trained how to calculate my time manually in tenth-hour

2

increments and rely on the laminated drawing of the clock that the company provides which shows the tenth-hour increments.

15.    I restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. To restart my computer, I select the option that says restart. The system usually begins the restart process as I am preparing to walk away from my desk. It doesn't take long to initiate the restart, typically only about 1-minute.

16.    The system automatically captures the time I restart my computer at the end of the day into ETS. When I arrive for my next scheduled shift, I review the time the system records when I restarted my computer at the end of the prior shift and believe it always accurately reflects the time I restarted my computer. I know that when I sign my time card each week I am indicating that the time record for the week is accurate.

17.    If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time. I have to ensure there is no unallocated time on my time record.

18.    On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and log-off/restart time, the system allows me to input that time and save my time card. If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

19.    I believe my supervisor reviews my time card daily and he approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

20.    Sometimes, I have to attend classroom training. When I attend training, I log onto a training computer. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

21.    I participate in "hot seating" only for a very brief period of time, maybe just one day. Hot seating occurs when I am not assigned to a specific computer, but instead have to wait to be assigned to the next available computer. When I hot seated, I arrived at the hot seating area and signed in to record the time I arrived to record the time I arrived. When I hot seated, I used the time I arrived to the hot seating area as my start time.

22.    Even before the company began capturing our start and end of day time stamps via the log on and restart of the computer, I was still responsible for accurately recording my hours worked. During that prior time period, I was also instructed to record all time worked. I was trained that my day started as soon as sat down at my computer and attempted to turn on my computer. Prior to the start of my shift, I would wait in my car or a common area. I would not sit down at my work station until just a couple of minutes before my shift was scheduled to start

– approximately 5-minutes.  Going to your desk earlier than your shift start time was frowned upon.  I recorded my start time as the time I sat down at my work station and attempted to log onto my computer or my phone, whichever occurred first.  I generally did not perform work prior to logging onto my computer and my phone.  I would sometimes read e-mails for up to 5-minutes before my shift start time.

23.     During that time period, at the end of the day, I recorded my end time as the time I logged off my phone.  I did not perform any work after restarting my computer and logging off my phone.

24.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones.  I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked.  I have never been asked to work off-the-clock, nor have I done so.  If anyone had ever told me to work off-the-clock, I would have reported it.

25.     I have recorded all the time that I have worked and believe I have been properly paid for all hours worked throughout my employment.

26.     I have been paid overtime compensation whenever I worked more than 40-hours in a week.

27.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 18, 2018 in Maricopa County, Arizona.

April Fennell

## DECLARATION OF MAYRA FERNANDEZ

I, Mayra Fernandez, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true. If called upon as a witness I could and would testify as to the truth of the facts below. I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021. I have been employed by GDIT in this position since December 2007.

3.      I voluntary spoke with Dana Hooper, counsel for GDIT, with respect to the issues set forth in this Declaration. She informed me that I was not required to speak with her and that I could end our conversation at any time. She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration. We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked. I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.      I have received training on GDIT's timekeeping policies. I have been receiving training on GDIT's timekeeping policies on a regular basis since the start of my employment. I know that I should record all time worked without exception. I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer. I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer. I also do not – and cannot – perform any work after I restart or log off a GDIT computer. I have had this same understanding throughout my employment at GDIT.

7.      I typically arrive at the call center about 5 minutes before my shift is scheduled to begin to put my items in my locker. I sit down at my desk about 1 minute before my shift starts.

1

Case 8:18-cv-00855-CEH-TGW   Document 125-1   Filed 08/31/18   Page 53 of 169 PageID 1963

8.      I store my personal items in a locker provided by GDIT. I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password. Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     I have never had any issues logging onto my computer, other than a technical issue. If there is an issue, I log into the phone and report to the supervisor to capture my time.

11.     Once I log onto my computer, I log into NGD, which logs me onto the phone. Then, I go to Empower and emails. At the end of the day, I go to the Electronic Timekeeping System (ETS) system, which is where I record my time. I am required to record my total time worked each day in the ETS system.

12.     The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen. I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.     Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.     At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working. I deduct my unpaid meal break if I took one. In entering my total time worked, I include what time I will finish working based on how long it will take me to finish my time card and restart the computer.

15.     I am trained how to calculate my time manually in tenth-hour increments, and that is how I enter my time into ETS.

16.     I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. To log off or restart my computer, I select the option that says log off or restart. As I log off of my phone, I wait for my computer to actually perform the log off or restart before leaving for the day, which takes a few seconds.

17.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS. I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and

2

record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and log-off/restart time, the system allows me to input that time and save my time card. If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

20.     My supervisor reviews and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

21.     Sometimes, I have to attend classroom training. When I attend training, I log onto a training computer, my regular computer continues to track my time in ETS. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

22.     Sometimes, during very busy times, I participate in "hot seating." Hot seating occurs when I am not assigned to a specific computer, but instead have to wait to be assigned to the next available computer. When I am hot seating, I log into the phone system in the hot seating area using my unique code to record the time I arrived. When I am hot seating, I use the time I arrived to the hot seating area as my start time.

23.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

24.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

25.     Even before the company began capturing our start and end of day time stamps via the log on and log-off/restart of the computer, I was still responsible for accurately recording my hours worked. During that prior time period, I was also instructed to record all time worked. I was trained that my day started as soon as sat down at my computer and attempted to log onto my computer. Prior to the start of my shift, I would not log in until about 1 minute before my shift was scheduled to begin. I recorded my start time as the time I sat down at my work station and

attempted to log onto my computer or my phone, whichever occurred first. I did not perform any work prior to logging onto my computer and my phone.

26.     During that time period, at the end of the day, I recorded my end time as the time I logged off logged off my phone, which was the last activity I did. I did not perform any work after logging off my phone.

27.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones.

28.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked. I have never been asked to work off-the-clock, nor have I done so.

29.     I have not worked off the clock. I have recorded all the time that I have worked. I believe I have been properly paid for all hours worked.

30.     I have been paid overtime compensation whenever I worked more than 40 hours in a week.

31.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 14, 2018, in Maricopa County, Arizona.

Mayra Fernandez

4

## DECLARATION OF MARIA FIGUEROA

I, Maria Figueroa, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position since September 2015.

3.      I voluntary spoke with Aaron Lloyd, counsel for GDIT, with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could end our conversation at any time. He also informed me that I would not receive any benefit for agreeing to speak with him and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with him and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.      I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies a couple times during my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment.

7.      I typically arrive at the call center approximately 7 minutes before my shift is scheduled to begin to wait in the common area until just before my shift is scheduled to begin.  I do not sit down at my desk until my shift starts.

1

8.      I store my personal items in a locker provided by GDIT. I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password. Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     Occasionally, I am not able to log onto my computer because I have to change my password or have other system issues that prevent me from logging in. This has happened approximately 1 time in the last year. When this happens, I have to notify a supervisor, who will assist me with logging onto the computer, and I use the time I first attempted to log onto the computer as my start time.

11.     Once I log onto my computer, I am able to navigate to the Electronic Timekeeping System (ETS) system, which is where I record my time. At the end of the day, I am required to record my total time worked each day in the ETS system.

12.     The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen. I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.     Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.     At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working. I deduct my unpaid meal break if I took one. In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

15.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day. I am also trained how to calculate my time manually in tenth-hour increments.

16.     I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. To log off or restart my computer, I select the option that says log off or restart, then walk away. I do not wait for my computer to actually perform the log off or restart before leaving for the day.

17.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS. I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     My supervisor reviews and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

20.     Sometimes, I have to attend classroom training. When I attend training, I log onto a training computer, which also automatically enters my end time into ETS. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

21.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

22.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

23.     Even before the company began capturing our start and end of day time stamps via the log on and log-off/restart of the computer, I was still responsible for accurately recording my hours worked. During that prior time period, I was also instructed to record all time worked. I was trained that my day started as soon as sat down at my computer and attempted to turn on my computer. Prior to the start of my shift, I would wait in a break room or common area. I would not sit down at my work station until my shift was scheduled to start. I recorded my start time as the time I sat down at my work station and attempted to log onto my computer or my phone, whichever occurred first. I did not perform any work prior to logging onto my computer and my phone.

24.     During that time period, at the end of the day, I recorded my end time as the time I logged off or restarted my computer or logged off my phone, whichever occurred last. I did not perform any work after logging off or restarting my computer and logging off my phone.

25.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones. I have not felt the need to come in prior to my shift to turn on my computer or get ready to be on the phones.

26.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked.  I have never been asked to work off-the-clock, nor have I done so.

27.     I have not worked off the clock during the term of my employment.  I have recorded all the time that I have worked during the term of my employment.

28.     I have been paid overtime compensation whenever I worked more than 40 hours in a week.  I do not believe I am owed any overtime compensation.

29.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June _18_, 2018, in Maricopa County, Arizona.

Maria Figueroa

4

## DECLARATION OF FERNANDA FRIAS-FLORES

I, Fernanda Frias-Flores, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position since August 2014.

3.      I voluntary spoke with Aaron Lloyd, counsel for GDIT, with respect to the issues set forth in this Declaration. He informed me that I was not required to speak with him and that I could end our conversation at any time. He also informed me that I would not receive any benefit for agreeing to speak with him and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with him and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.      I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies approximately twice a year since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.      I typically arrive at the call center 10 minutes before my shift is scheduled to begin to wait in the common area until just before my shift is scheduled to begin.  I do not sit down at my desk until my shift starts.

1

8.      I store my personal items in a locker provided by GDIT. I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password. Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     I have never had any issues logging onto my computer.

11.     Once I log onto my computer, I have access to the Electronic Timekeeping System (ETS) system, which is where I record my time. At the end of the day, I am required to record my total time worked each day in the ETS system.

12.     The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen. I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.     Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.     At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working. I deduct my unpaid meal break if I took one. In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

15.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day. I am also trained how to calculate my time manually in tenth-hour increments.

16.     I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. To log off or restart my computer, I select the option that says log off or restart, I wait a short time to make sure that the process is underway, and then I walk away. I estimate this takes less than one minute.

17.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS. I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and

record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     My supervisor reviews and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

20.     Sometimes, I have to attend classroom training. When I attend training, I understand that I am required to record all time I spend in training.

21.     Sometimes, during very busy times, I participate in "hot seating." Hot seating occurs when I am not assigned to a specific computer, but instead have to wait to be assigned to the next available computer. When I am hot seating, I arrive at the hot seating area and I log into the phone system in the hot seating area using my unique code to record the time I arrived. I have never had to wait more than a minute or two in line to log into the phone system. When I am hot seating, I use the time I arrived to the hot seating area as my start time.

22.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

23.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

24.     Even before the company began capturing our start and end of day time stamps via the log on and log-off/restart of the computer, I was still responsible for accurately recording my hours worked. During that prior time period, I was also instructed to record all time worked. I was trained that my day started as soon as sat down at my computer and attempted to turn on my computer. Prior to the start of my shift, I would wait in a break room or common area. I would not sit down at my work station until my shift was scheduled to start. I recorded my start time as the time I sat down at my work station and attempted to log onto my computer or my phone, whichever occurred first. I did not perform any work prior to logging onto my computer and my phone.

25.     During that time period, at the end of the day, I recorded my end time as the time I logged off or restarted my computer or logged off my phone, whichever occurred last. I did not perform any work after logging off or restarting my computer and logging off my phone.

3

26.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones.  I have not felt the need to come in prior to my shift to turn on my computer or get ready to be on the phones.

27.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked.  I have never been asked to work off-the-clock, nor have I done so.

28.     I have not worked off the clock during the term of my employment.  I have recorded all the time that I have worked during the term of my employment.  I believe I have been properly paid for all hours worked during the term of my employment.

29.     I have been paid overtime compensation whenever I worked more than 40 hours in a week.

30.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 19, 2018, in Maricopa County, Arizona.


_____
Fernanda Frias-Flores

4

## DECLARATION OF YVONNE FUENTES

I, Yvonne Fuentes, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.   I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position since June 2014.

3.      I voluntary spoke with Aaron Lloyd, counsel for GDIT, with respect to the issues set forth in this Declaration. He informed me that I was not required to speak with him and that I could end our conversation at any time. He also informed me that I would not receive any benefit for agreeing to speak with him and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with him and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.      I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies at least annually since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.      I typically arrive at the call center 5 minutes before my shift is scheduled to begin. I do not sit down at my desk until my shift starts.

8.     I store my personal items in my vehicle.  I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.     After I sit down at my desk, the next thing I do is log onto my computer using my ID and password.  Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     Occasionally, I am not able to log onto my computer because I have to change my password or have other system issues that prevent me from logging in.  This has happened approximately one time during my employment.  When this happens, I have to notify a supervisor, who will assist me with logging onto the computer, and I use the time I first attempted to log onto the computer as my start time.

11.     Once I log onto my computer, I have access to the Electronic Timekeeping System (ETS) system, which is where I record my time.  At the end of the day, I am required to record my total time worked each day in the ETS system.

12.     The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen.  I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.     Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.     At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working.  I deduct my unpaid meal break if I took one.  In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

15.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day.  I am also trained how to calculate my time manually in tenth-hour increments.

16.     I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift.  To log off or restart my computer, I select the option that says log off or restart, I make sure the process has started, and then walk away.  I do not wait for my computer to actually perform the log off or restart before leaving for the day.

17.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS. I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and log-off/restart time, the system allows me to input that time and save my time card. If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

20.     My supervisor reviews and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

21.     Sometimes, I have to attend classroom training. When I attend training, I understand that I am required to record all time I spend in training.

22.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

23.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

24.     Even before the company began capturing our start and end of day time stamps via the log on and log-off/restart of the computer, I was still responsible for accurately recording my hours worked. During that prior time period, I was also instructed to record all time worked. I was trained that my day started as soon as sat down at my computer and attempted to turn on my computer. Prior to the start of my shift, I would wait in a break room or common area. I would not sit down at my work station until my shift was scheduled to start. I recorded my start time as the time I sat down at my work station and attempted to log onto my computer or my phone, whichever occurred first. I did not perform any work prior to logging onto my computer and my phone.

25.     During that time period, at the end of the day, I recorded my end time as the time I logged off or restarted my computer or logged off my phone, whichever occurred last.  I did not perform any work after logging off or restarting my computer and logging off my phone.

26.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones. I have not or felt the need to come in prior to my shift to turn on my computer or get ready to be on the phones.

27.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked.  I have never been asked to work off-the-clock, nor have I done so.

28.     I have not worked off the clock during the term of my employment. I have recorded all the time that I have worked during the term of my employment.  I believe I have been properly paid for all hours worked during the term of my employment.

29.     I have been paid overtime compensation whenever I worked more than 40 hours in a week.

30.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June _14_, 2018, in Maricopa County, Arizona.


Yvonne Fuentes

4

## DECLARATION OF FAITH GRANADO

I, Faith Granado, declare and state as follows:

1.       I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.       I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position since September 2015.

3.       I voluntary spoke with Dana Hooper, counsel for GDIT, with respect to the issues set forth in this Declaration.  She informed me that I was not required to speak with her and that I could end our conversation at any time. She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.       As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.       I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies on a regular basis since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.       Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.       I typically arrive at the call center about 7 minutes before my shift is scheduled to begin and I drop off my items in my locker. I go to my desk about 1 minute before my shift starts.

8.      I store my personal items in a locker provided by GDIT. I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password. Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     I have never had any issues logging onto my computer, other than a password error. If I get locked out, I log into my phone and let my supervisor know so that my time is captured.

11.     Once I log onto my computer, I pull up NGD, the Outlook and Empower. At the end of the day, I go to the Electronic Timekeeping System (ETS) system, which is where I record my time. I am required to record my total time worked each day in the ETS system.

12.     The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen. I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.     One time I was counted as late because the computer did not show my time stamp, but only showed the NGD time that I logged in. I advised my supervisor, and I made sure that it was corrected.

14.     Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

15.     At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working. I deduct my unpaid meal break if I took one. In entering my total time worked, I include what time I will finish working based on how long it will take me to finish my time card and restart the computer; I am given 3 minutes to do this. If there is not enough time to complete my time card before my shift ends, I will enter my time into ETS the next morning

16.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day. I am also trained how to calculate my time manually in tenth-hour increments, and I have a sign at my desk for this.

17.     I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. To log off or restart my computer, I select the option that says log off or restart. I do not wait for my computer to actually perform the log off or restart before leaving for the day.

18.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS. I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

19.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

20.     On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and log-off/restart time, the system allows me to input that time and save my time card. If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

21.     My supervisor reviews and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

22.     Sometimes, I have to attend classroom training. When I attend training, I log onto a training computer, which automatically enters my time into ETS. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer. My regular computer continues to be logged on and accounts for my time, while I am on my training computer. The ETS system accounts for this the next day to show the correct time to cover my training.

23.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

24.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

25.     Even before the company began capturing our start and end of day time stamps via the log on and log-off/restart of the computer, I was still responsible for accurately recording my hours worked. During that prior time period, I was also instructed to record all time worked. I was trained that my day started as soon as sat down at my computer and attempted to turn on my computer. I would not sit down at my work station until my shift was scheduled to start. I recorded my start time as the time I sat down at my work station and attempted to log onto my computer or

my phone, whichever occurred first. I did not perform any work prior to logging onto my computer and my phone. If for some reason there was a problem, I would use NGD as my start time.

26.     During that time period, at the end of the day, I recorded my end time as the time I logged off or restarted my computer or logged off my phone, whichever occurred last. I did not perform any work after logging off or restarting my computer and logging off my phone.

27.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones.

28.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked. I have never been asked to work off-the-clock, nor have I done so.

29.     I have not worked off the clock. I have recorded all the time that I have worked. I believe I have been properly paid for all hours worked.

30.     I have been paid overtime compensation whenever I worked more than 40 hours in a week.

31.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 14, 2018, in Maricopa County, Arizona.

Faith Granado

4

## DECLARATION OF KEVIN GRAY

I, Kevin Gray, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.   I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position since approximately October 2010.  I also worked for the company that was purchased by GDIT.

3.      I voluntary spoke with Aaron Lloyd, counsel for GDIT, with respect to the issues set forth in this Declaration. He informed me that I was not required to speak with him and that I could end our conversation at any time. He also informed me that I would not receive any benefit for agreeing to speak with him and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with him and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare or the Federally Facilitated Marketplaces for half the year.  The other half of the year for the last four years I have been a trainer.  I was previously a supervisor in 2013.

5.      I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies about 5 times a year.  Before I was a trainer, I received training approximately 2 times a year.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding since the timekeeping system changed in approximately July 2016.

1

7.      I typically arrive at the call center 15-45 minutes before my shift is scheduled to begin to wait in the common area until just before my shift is scheduled to begin. I do not sit down at my desk until my shift starts.

8.      I store my personal items in a locker provided by GDIT. I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password. Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     Occasionally, I am not able to log onto my computer because I have to change my password or have other system issues that prevent me from logging in. This has happened maybe 1 time in the last one year. When this happens, I have to notify a supervisor, who will assist me with logging onto the computer, and I use the time I first attempted to log onto the computer as my start time.

11.     Once I log onto my computer, I am able to navigate to the Electronic Timekeeping System (ETS) system, which is where I record my time. At the end of the day, I am required to record my total time worked each day in the ETS system.

12.     The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen. I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.     Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.     At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working. I deduct my unpaid meal break if I took one. In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

15.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day. I am also trained how to calculate my time manually in tenth-hour increments.

16.     I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. To log off or restart my computer, I select the option that says log off or restart, I make sure that the log off process has initiated, and

then walk away. This takes about 10 seconds. I do not wait for my computer to actually perform the log off or restart before leaving for the day.

17.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS. I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     My supervisor reviews and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I or a timecard administrator by proxy will have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

20.     Sometimes, I have to attend classroom training. When I attend training, I log onto a training computer, which also automatically enters my end time into ETS. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

21.     Sometimes, during very busy times, I participate in "hot seating." Hot seating occurs when I am not assigned to a specific computer, but instead have to wait to be assigned to the next available computer. When I am hot seating, I arrive at the hot seating area and sign in to record the time I arrived/I log into the phone system in the hot seating area using my unique code to record the time I arrived. I have never had to wait more than five minutes in line to sign in on the sign in sheet/log into the phone system. When I am hot seating, I use the time I arrived to the hot seating area as my start time.

22.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

23.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

24.     Even before the company began capturing our start and end of day time stamps via the log on and log-off/restart of the computer, I was still responsible for accurately recording my

hours worked.  During that prior time period, I would occasionally log onto my computer 3-5 minutes before my shift to review emails.  I would do this before I logged into NGD.  I did this on my own time and did not expect to be paid for this time so I did not record the time worked.  I was doing this to get ahead for the day in the few minutes before my shift started.  This was not a company requirement and in my role as a supervisor during that time period I actually instructed my employees that there was no need to log onto the computer early.

25.     During that time period, at the end of the day, I recorded my end time as the time I logged off or restarted my computer or logged off my phone, whichever occurred last.  I did not perform any work after logging off or restarting my computer and logging off my phone.

26.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones. I have not been instructed or felt the need to come in prior to my shift to turn on my computer or get ready to be on the phones since at least mid-2016, which is approximately when we received several minutes of time to turn on our computers or get ready without those activities impacting our schedule adherence.

27.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked.  I have never been asked to work off-the-clock, nor have I done so.

28.     I have not worked off the clock since the company began using computer time stamps to validate the time that I was self-reporting and recording in the electronic time keeping system/since the current timekeeping system was implemented.  I have recorded all the time that I have worked.  I believe I have been properly paid for all hours worked since the company began using computer time stamps to validate the time that I was self-reporting and recording in the electronic time keeping system/since the current timekeeping system was implemented.  I do not believe I am owed any compensation from the company that I have not been paid.

29.     I have been paid overtime compensation whenever I worked more than 40 hours in a week.  I do not believe that there is any overtime compensation owed to me that I have not been paid.

30.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 18, 2018, in Maricopa County, Arizona.


Kevin Gray

4

## DECLARATION OF STEVEN HICKS

I, Steven Hicks, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true. If called upon as a witness I could and would testify as to the truth of the facts below. I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021. I have been employed by GDIT in this position since November 2009.

3.      I voluntary spoke with Dana Hooper, counsel for GDIT, with respect to the issues set forth in this Declaration. She informed me that I was not required to speak with her and that I could end our conversation at any time. She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration. We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked. I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Federally Facilitated Marketplaces.

5.      I have received training on GDIT's timekeeping policies. I have been receiving training on GDIT's timekeeping policies quarterly since the start of my employment. I know that I should record all time worked without exception. I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer. I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer. I also do not – and cannot – perform any work after I restart or log off a GDIT computer. I have had this same understanding throughout my employment at GDIT.

7.      I typically arrive at the call center about 45 minutes before my shift is scheduled to begin. Usually, I drop my items at my desk and go get something to eat and watch television in the common area. I then go to my desk about 15 minutes before my shift to drink coffee and meditate. I log onto my computer at exactly the start time of my shift.

8.    I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.    After I sit down at my desk, the next thing I do is log onto my computer using my ID and password. Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.    I do not have any issues logging onto my computer.

11.    Once I log onto my computer, I open NGD, which automatically connects me to my phone, I then go to emails, and sometimes I check Empower. At the end of the day, I go to the Electronic Timekeeping System (ETS) system, which is where I record my time. I am required to record my total time worked each day in the ETS system.

12.    The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen. I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.    Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.    At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working. I deduct my unpaid meal break if I took one. In entering my total time worked, I include what time I will finish working based on how long it will take me to finish my time card and restart the computer.

15.    My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day. I am also trained how to calculate my time manually in tenth-hour increments.

16.    I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. To log off or restart my computer, I select the option that says log off or restart. I wait for my computer to begin performing the log off or restart before leaving for the day.

17.    The system automatically captures the time I log off or restart my computer at the end of the day into ETS. I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and log-off/restart time, the system allows me to input that time and save my time card. If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

20.     My supervisor reviews and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

21.     Sometimes, I have to attend classroom training. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer. My log on and off onto my regular computer still accounts for the time in ETS.

22.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones.

23.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked. I have never been asked to work off-the-clock, nor have I done so.

24.     I have not worked off the clock. I have recorded all the time that I have worked. I believe I have been properly paid for all hours worked.

25.     I have been paid overtime compensation whenever I worked more than 40 hours in a week.

26.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June /9, 2018, in Maricopa County, Arizona.

_Steven Hicks_

Steven Hicks

## DECLARATION OF YARENNI HUICOCHEA

I, Yarenni Huicochea, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position since July 2013.

3.      I voluntary spoke with Aaron Lloyd, counsel for GDIT, with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could end our conversation at any time.  He also informed me that I would not receive any benefit for agreeing to speak with him and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with him and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.      I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies quarterly since the start of my employment.  I know that I should record all time worked without exception. I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.      I typically arrive at the call center a few minutes before my shift is scheduled to begin and wait in my vehicle.  I then put my personal items in my locker.  I do not sit down at my desk until my shift starts.

1

8.     I store my personal items in a locker provided by GDIT. I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.     After I sit down at my desk, the next thing I do is log onto my computer using my ID and password. Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.    Occasionally, I am not able to log onto my computer because I have to change my password or have other system issues that prevent me from logging in. This has happened approximately two times in the last year. When this happens, I have to notify a supervisor, who will assist me with logging onto the computer, and I use the time I first attempted to log onto the computer as my start time.

11.    Once I log onto my computer, I have access to the Electronic Timekeeping System (ETS) system, which is where I record my time. At the end of the day, I am required to record my total time worked each day in the ETS system.

12.    The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen. I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.    Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.    At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working. I deduct my unpaid meal break if I took one. In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

15.    My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day. I am also trained how to calculate my time manually in tenth-hour increments.

16.    I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. To log off or restart my computer, I select the option that says log off or restart, then wait for the computer to perform the log off and restart before leaving for the day. This process takes less than a minute.

17.    The system automatically captures the time I log off or restart my computer at the end of the day into ETS. I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

2

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and log-off/restart time, the system allows me to input that time and save my time card. If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

20.     My supervisor reviews and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

21.     Sometimes, I have to attend classroom training. When I attend training, I log onto a training computer, which also automatically enters my logoff time into ETS. When I attend training, I understand that I am required to record all time I spend in training.

22.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

23.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

24.     Even before the company began capturing our start and end of day time stamps via the log on and log-off/restart of the computer, I was still responsible for accurately recording my hours worked. During that prior time period, I was also instructed to record all time worked. I was trained that my day started as soon as sat down at my computer and attempted to turn on my computer. Prior to the start of my shift, I would wait in a break room or common area. I would not sit down at my work station until my shift was scheduled to start. I recorded my start time as the time I sat down at my work station and attempted to log onto my computer or my phone, whichever occurred first. I did not perform any work prior to logging onto my computer and my phone.

25.    During that time period, at the end of the day, I recorded my end time as the time I logged off or restarted my computer or logged off my phone, whichever occurred last.  I did not perform any work after logging off or restarting my computer and logging off my phone.

26.    I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones.  I have not felt the need]to come in prior to my shift to turn on my computer or get ready to be on the phones.

27.    I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked.  I have never been asked to work off-the-clock, nor have I done so.

28.    I have not worked off the clock during the term of my employment.  I have recorded all the time that I have worked during the term of my employment.  I believe I have been properly paid for all hours worked during the term of my employment.

29.    I have been paid overtime compensation whenever I worked more than 40 hours in a week.

30.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 19, 2018, in Maricopa County, Arizona.

Yarenni Huicochea

## DECLARATION OF BLANCA ISLAS

I, Blanca Islas, declare and state as follows:

1.    I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true. If called upon as a witness I could and would testify as to the truth of the facts below. I give this Declaration freely without payment or coercion of any kind.

2.    I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021. I have most recently been employed by GDIT in this position since February 17, 2014.

3.    I voluntary spoke with Dana Hooper, counsel for GDIT, with respect to the issues set forth in this Declaration. She informed me that I was not required to speak with her and that I could end our conversation at any time. She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration. We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked. I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.    As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.    I have received training on GDIT's timekeeping policies. I have been receiving training on GDIT's timekeeping policies quarterly since the start of my employment. I know that I should record all time worked without exception. I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.    Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer. I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer. I also do not – and cannot – perform any work after I restart or log off a GDIT computer. I have had this same understanding throughout my employment at GDIT.

7.    I typically arrive at the call center about 25 minutes before my shift is scheduled to begin to put my lunch away and go to my locker. I do not sit down at my desk until about 1 minute before my shift starts.

1

8.     I store my personal items in a locker provided by GDIT.  I am not allowed to have any paper, but I can take a clear bag of personal items at my desk with lotion or medications, for example.  Due to the sensitive nature of the information to which I have access, I cannot have paper or cell phones.  All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.     After I sit down at my desk, the next thing I do is log onto my computer using my ID and password.  Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.    I have never had any issues logging onto my computer, other than a password expiring.

11.    Once I log onto my computer, I pull up NGD, I look to see if I have training, go to Empower and email.  I look at the Electronic Timekeeping System (ETS) system, which is where I record my time, in the morning to make sure it was correct from the day before and put in my lunch of 30 minutes.  At the end of the day, I am required to record my total time worked each day in the ETS system.

12.    The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen.  I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.    Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.    At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS once I am done with my last call, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working.  In entering my total time worked, I include what time I will finish working based on how long it will take me to finish my time card and restart the computer.

15.    My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day.  I am also trained how to calculate my time manually in tenth-hour increments. I have a chart that shows the increments of time.

16.    I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift.  To log off or restart my computer, I select the option that says log off or restart.  I wait for my computer to actually perform the log off or restart before leaving for the day.

17.    The system automatically captures the time I log off or restart my computer at the end of the day into ETS.  I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and log-off/restart time, the system allows me to input that time and save my time card. If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

20.     My supervisor reviews and approves my time card on a weekly basis and sometimes daily if there is an issue. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

21.     Sometimes, I have to attend classroom training. When I attend training, I log onto a training computer, but my time is still captured to my regular computer into ETS. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

22.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

23.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

24.     Even before the company began capturing our start and end of day time stamps via the log on and log-off/restart of the computer, I was still responsible for accurately recording my hours worked. During that prior time period, I was also instructed to record all time worked. I was trained that my day started as soon as sat down at my computer and attempted to turn on my computer. I would not sit down at my work station until my shift was scheduled to start. I recorded my start time as the time I sat down at my work station and attempted to log onto my computer or my phone, whichever occurred first. I did not perform any work prior to logging onto my computer and my phone.

3

25.     During that time period, at the end of the day, I recorded my end time as the time I logged off or restarted my computer or logged off my phone, whichever occurred last.  I did not perform any work after logging off or restarting my computer and logging off my phone.

26.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones.

27.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked.  I have never been asked to work off-the-clock, nor have I done so.

28.     I have not worked off the clock.  I have recorded all the time that I have worked.  I believe I have been properly paid for all hours worked.

29.     I have been paid overtime compensation whenever I worked more than 40 hours in a week.

30.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 19 , 2018, in Maricopa County, Arizona.

Blanca Islas

## DECLARATION OF WILLIAM LAVEN

I, William Laven, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Ave., Phoenix, AZ 85021.  I have been employed by GDIT in this position since August of 2016.

3.      I voluntary spoke with Kimberley Dempster Neilio, counsel for GDIT, with respect to the issues set forth in this Declaration.  She informed me that I was not required to speak with her and that I could end our conversation at any time.  She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40-hours in a workweek.  It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.      I received training on GDIT's timekeeping policies when I began my employment.  I also rely on my supervisors if I have questions about timekeeping.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.      I typically arrive at the call center about 15-minutes before my shift is scheduled to begin.  I wait in my car for a few minutes and then enter the call center.  I leave my lunch in the refrigerator and retrieve my head set and wrist pad from my locker before I go to my desk.  I do not sit down at my desk until my shift starts.

1

8.     I store my personal items in a locker provided by GDIT.  I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access.  All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.     After I sit down at my desk, the next thing I do is log onto my computer using my ID and password.  Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.    I have had very few issues logging onto my computer during my employment with GDIT.  When I have had issues, they have been due to user error.  This has happened maybe one time in the last year.  When I have had problems, I used the time when I initially tried to log onto the computer as my start time.  I also typically let my supervisor know of the issue I experienced.

11.    Once I log onto my computer, the Electronic Timekeeping System (ETS) system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen.  ETS is where I record my time.  At the end of the day, I am required to record my total time worked each day in the ETS system.  At the end of each day, I review the time the system recorded when I logged into my computer that day.  ETS has always accurately reflected the time I logged into my computer.

12.    Each day in which I work more than four hours, I take an unpaid meal break.  I take a full, 30-minute uninterrupted meal break away from my desk and work area.

13.    Two minutes prior to the end of each shift, I enter an AUX code on the phone that makes it inactive to prevent any further incoming calls.  I log out of NGD and the phone system. I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working.  I deduct my unpaid meal break if I took one.  In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

14.    My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day.  I don't generally rely on the time calculator.  I am also trained how to calculate my time manually in tenth-hour increments.

15.    I restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift.  To restart my computer, I select the option that says restart.  I ensure that the restart process begins before I walk away.  That generally takes just a matter of seconds.

16.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS.  I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

17.     If the computer time stamp system records more total time worked based on my log on and restart time than I record in ETS, the system prompts me to check my time and record the additional time.  On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and restart time, the system allows me to input that time and save my time card.  If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

18.     My supervisor reviews and approves my time card on a weekly basis.  My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes.  My supervisor cannot actually make any changes to my timecard.  If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

19.     Sometimes, I have to attend classroom training.  When I attend training, I log onto a training computer, which also automatically enters my start time into ETS.  When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

20.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps.  Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system.  In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

21.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

22.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones.  I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked.  I have never been asked to work off-the-clock, nor have I done so.

23.     Throughout my employment with GDIT, I have recorded all the time that I have worked and believe I have been properly paid for all hours worked.

24.     I have been paid overtime compensation whenever I worked more than 40-hours in a week.

25.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 19, 2018 in Maricopa County, Arizona.

William Laven

4

## DECLARATION OF GLADYS LEON

I, Gladys Leon, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.   I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position since November 21, 2016.

3.      I voluntary spoke with Dana Hooper, counsel for GDIT, with respect to the issues set forth in this Declaration.  She informed me that I was not required to speak with her and that I could end our conversation at any time. She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare or the Federally Facilitated Marketplaces.

5.      I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.      I typically arrive at the call center about 10 minutes before my shift is scheduled to begin to go to my locker, restroom or lunch, if there is time.  Sometimes, I go directly to my desk just before my shift is scheduled to begin.  I do not sit down at my desk until my shift starts.

1

8.      I store my personal items in a locker provided by GDIT.  I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access.  All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password.  Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.      I have never had any issues logging onto my computer, other than a password problem or the technology is not working. If there is an issue logging onto my computer, I can log onto my phone and I will tell my supervisor so that my time can be counted.  My supervisor will help me to call IT and log in.

11.      Once I log onto my computer, I pull up NGD, which logs me into my phone, then Empower, email, notes, and scripts.  At the start of my day, I look at the Electronic Timekeeping System (ETS) system, which is where I record my time, to see that it is correct or if adjustments are needed.  At the end of the day, I am required to record my total time worked each day in the ETS system.

12.      The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen.  I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.      Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.      At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working.  I deduct my unpaid meal break if I took one.  In entering my total time worked, I include what time I will finish working based on how long it will take me to finish my time card and restart the computer.

15.      I rely on ETS to calculate my hours.  GDIT gives us a chart on how to calculate my time manually in tenth-hour increments.

16.      I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. To log off or restart my computer, I select the option that says log off or restart.  I wait for my computer to actually perform the log off or restart  while I am logging off of the phone, which takes a few seconds, before leaving for the day.

17.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS.  I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time.  The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     My supervisor reviews and approves my time card on a weekly basis.  My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes.  My supervisor cannot actually make any changes to my timecard.  If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

20.     Sometimes, I have to attend classroom training.  When I attend training, I log onto a training computer, which also automatically enters my start time into ETS and this stops my regular computer's clock.  Then, when I go back to my regular computer the time is off, but it resets and fixes it the next day.  When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

21.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones.

22.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked.  I have never been asked to work off-the-clock, nor have I done so.

23.     I have not worked off the clock.  I have recorded all the time that I have worked.  I believe I have been properly paid for all hours worked.

24.     I have been paid overtime compensation whenever I worked more than 40 hours in a week.

25.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June _19_, 2018, in Maricopa County, Arizona.

_____
Gladys Leon

3

## DECLARATION OF JOANNA MATA

I, Joanna Mata, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.   I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position training on October 28, 2013 and then became permanent as of February 17, 2014.

3.      I voluntary spoke with Dana Hooper, counsel for GDIT, with respect to the issues set forth in this Declaration.  She informed me that I was not required to speak with her and that I could end our conversation at any time. She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare or the Federally Facilitated Marketplaces.

5.      I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies on a regular basis since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

1

7.      I typically arrive at the call center approximately 15 minutes before my shift is scheduled to begin to put my lunch away, then use the restroom, then go to my locker just before my shift is scheduled to begin. I sit down at my desk 1-2 minutes before my shift starts.

8.      I store my personal items in a locker provided by GDIT. I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password. Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     I have not had any issues logging onto my computer.

11.     Once I log onto my computer, I first go to NGD, then check Empower, emails and then I go to the Electronic Timekeeping System (ETS) system, which is where I record my time for that day based on an estimation of my normal hours per day. At the end of the day, I am required to record my total time worked each day in the ETS system.

12.     The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen. I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.     After work three and a half hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.     At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, then I check the rest of my emails, I will check for overtime to see if I can sign up for extra hours in advance, and then I log out of the programs. I only go back to ETS at the end of the day if I need to change anything, such as going over my usual hours per day.

15.     I deduct my unpaid meal break if I took one. In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

16.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day.

17.     I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. To log off or restart my computer, I select the option that says log off or restart, then walk away.

2

18.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS. I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

19.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

20.     On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and log-off/restart time, the system allows me to input that time and save my time card. If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

21.     My supervisor reviews and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

22.     Sometimes, I have to attend classroom training. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

23.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

24.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

25.     Even before the company began capturing our start and end of day time stamps via the log on and log-off/restart of the computer, I was still responsible for accurately recording my hours worked. During that prior time period, I was also instructed to record all time worked. I was trained that my day started as soon as sat down at my computer and attempted to turn on my computer. Prior to the start of my shift, I would go to my locker and use the restroom before going to my desk. I would not sit down at my work station until my shift was scheduled to start. I recorded my start time as the time I sat down at my work station and attempted to log onto my phone, whichever occurred first. I did not perform any work prior to logging onto my phone.

26.     During that time period, at the end of the day, I recorded my end time as the time I logged off or restarted my computer or logged off my phone, whichever occurred last.  I did not perform any work after logging off or restarting my computer and logging off my phone.

27.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones.

28.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked.  I have never been asked to work off-the-clock, nor have I done so.

29.     I have not worked off the clock.  I have recorded all the time that I have worked.  I believe I have been properly paid for all hours worked.

30.     I have been paid overtime compensation whenever I worked more than 40 hours in a week.

31.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June _18_, 2018, in Maricopa County, Arizona.

Joanna Mata

4

## DECLARATION OF SANDRA MCFADDEN

I, Sandra McFadden, declare and state as follows:

1.       I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.       I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position since November 16, 2014.

3.       I voluntary spoke with Dana Hooper, counsel for GDIT, with respect to the issues set forth in this Declaration.  She informed me that I was not required to speak with her and that I could end our conversation at any time. She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.       As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.       I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies annually/on a regular basis since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.       Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.       I typically arrive at the call center about 10-15 minutes before my shift is scheduled to begin to go to my locker, drop off my food, then go to my work station about 3 minutes until my shift is scheduled to begin.

8.      I store my personal items in a locker provided by GDIT.  I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access.  All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password.  Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     I have had technical issues logging onto my computer.  If that happens, I look at the time I tried to log in and let my supervisor know so that I can account for the time I started the day.

11.     Once I log onto my computer, I go to NGD, then I log into Empower, next I pull up the internet and email. I also go to the Electronic Timekeeping System (ETS) system, which is where I record my time, to make sure that my log in time is correct.  At the end of the day, I am required to record my total time worked each day in the ETS system.

12.     The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen.  I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.     Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.     At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working.  I deduct my unpaid meal break if I took one.  In entering my total time worked, I include what time I will finish working based on how long it will take me to finish my time card and restart the computer.

15.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day.  I am also trained how to calculate my time manually in tenth-hour increments.  I also have a chart on my desk wall.

16.     I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift.  To log off or restart my computer, I select the option that says log off or restart.  I wait for my computer to actually perform the log off or restart before leaving for the day.

17.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS.  I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and log-off/restart time, the system allows me to input that time and save my time card. If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

20.     My supervisor reviews and approves my time card on a daily basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

21.     Sometimes, I have to attend classroom training. When I attend training, I sign in on paper to account for my time and it is also in my Empower. We do not use a production code for training, we use a training password and log in. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

22.     Sometimes, during very busy times, I participated in "hot seating" before June 2016 and not recently. Hot seating occurs when I am not assigned to a specific computer, but instead have to wait to be assigned to the next available computer. When I am hot seating, I arrive at the hot seating area and sign in to record the time I arrived on a sheet and computer. I have never had to wait more than a minute or two in line to sign in on the sign in sheet. When I am hot seating, I believe that the time I start on the assigned computer was the time used as my start time; I never waited more than ten minutes to get onto an assigned computer and log in.

23.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

24.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

25.     Even before the company began capturing our start and end of day time stamps via the log on and log-off/restart of the computer, I was still responsible for accurately recording my hours worked. During that prior time period, I was also instructed to record all time worked. I was trained that my day started as soon as sat down and attempted to log onto my computer. Prior to the start of my shift, I would go to my locker and drop off my lunch before heading to my work station. I would sit down at my work station about 2-3 minutes before my shift was scheduled to start. I recorded my start time as the time I sat down at my work station and attempted to log onto my phone. I did not perform any work prior to logging onto my phone.

26.     During that time period, at the end of the day, I recorded my end time as the time I logged off my phone. Then, I would log off of my computer, which would only take less than one minute. I did not perform any work after logging off my phone.

27.     During that time period, sometimes the computer and the phone times would not match, so I was confused as to which one to use, but I was still able to capture my time worked in an accurate manner.

28.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones.

29.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked. I have never been asked to work off-the-clock, nor have I done so.

30.     I have not worked off the clock. I have recorded all the time that I have worked. I believe I have been properly paid for all hours worked.

31.     I have been paid overtime compensation whenever I worked more than 40 hours in a week.

32.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 18, 2018, in Maricopa County, Arizona.

Sandra McFadden

4

## <u>VOLUNTARY WITNESS INTERVIEW</u>

### *STATEMENT FROM INTERVIEWER*

1.  My name is Kimberley Dempster Neilio. My law firm represents General Dynamics Information Technology, Inc. in the defense of a lawsuit regarding the Company's timekeeping practices. Specifically, a CSR has filed a lawsuit on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. ("GDIT") and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. I would like to discuss your duties and timekeeping in connection with this matter. You will remain on-the-clock during this interview.

2.  Our interest in conducting these interviews is to obtain complete and accurate information. Please appreciate that I represent GDIT and information that you share may be used in the defense of this matter. I only represent GDIT and do not represent GDIT employees.

3.  I am not going to ask, and I do not want you to tell me, your opinions, or the opinions or views of other employees, as it relates to union activity or other rights protected under the National Labor Relations Act.

4.  Before we begin, I want to assure you that your participation in this interview is completely voluntary and that you have no obligation to speak with me. If you do talk to me and answer my questions, it will be entirely voluntary on your part. You may decide to answer only some of my questions or to end our discussion at any time you wish. Your job will not be affected whether your talk to me or do not talk to me, or if you choose to participate or not to participate in this interview. Regardless of your decision to participate in this interview, there will be no prejudice against you or benefit to you. You will not be penalized or discriminated against, nor will you receive any benefit or loss from the Company based on information you may give me. The Company has a zero-tolerance policy when it comes to retaliation of any kind.

5.  I will be taking notes as we discuss your duties and responsibilities. After our discussion, I may review my notes with you to ensure that they are accurate or I may ask you to sign a statement which describes your duties and timekeeping practices. Please make sure that you correct any information that I may not have understood correctly.

6.  In some cases, an employee may be represented by an attorney with respect to his or her relationship with his or her employer. If you are represented by an attorney in a matter involving GDIT, the rules of professional ethics for attorneys do not permit me to interview you today. Because I am not your personal attorney, I cannot give you any advice concerning your relationship with GDIT.

Initials

7.   The information you provide will be compiled with information from other interviews, and will be used by our firm to represent and provide legal advice to GDIT and to defend the lawsuit.  If you are asked by an attorney representing plaintiffs who is bringing the lawsuit to provide information about your job, you are free to do so, and you are free to decline to do so.  Again, the choice to be interviewed is yours.

8.   We want to hear your honest, candid responses.  Please do not give me an answer because you think that I or the Company would like the answer.  Your answers will not be used as part of a performance review.  There are no right or wrong answers to the questions.  Please provide only truthful answers in response to my questions.

## WITNESS ACKNOWLEDGMENT AND CONSENT

The above statement was read and explained to me prior to me being asked any questions.  I understand the voluntary nature of this interview.  I confirm that I am not represented by counsel with respect to my employment with General Dynamics Information Technology, Inc.  I agree to be interviewed regarding my job, responsibilities and pay and to provide truthful answers, entirely of my own free choice and without any threat, intimidation, coercion or promises of benefits to me.

Dated: June 19, 2018

_____
Signature

_____
Print Name

_____
Job Title

Initials _____

# DECLARATION OF MELVIN MILLER

I, Melvin Miller, declare and state as follows:

1.       I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.       I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position since January 2014.

3.       I voluntary spoke with Aaron Lloyd, counsel for GDIT, with respect to the issues set forth in this Declaration. He informed me that I was not required to speak with him and that I could end our conversation at any time. He also informed me that I would not receive any benefit for agreeing to speak with him and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with him and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked. I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.       As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare and the Federally Facilitated Marketplaces.

5.       I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies approximately every 6-8 months since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.       Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer. I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer. I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.       I typically arrive at the call center 30 minutes before my shift is scheduled to begin to wait in the common area until just before my shift is scheduled to begin.  I do not sit down at my desk until my shift starts.

8.      I store my personal items in a locker provided by GDIT.  I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access.  All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password.  Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     I have never really have any issues logging onto my computer.

11.     Once I log onto my computer, I am automatically taken to the Electronic Timekeeping System (ETS) system, which is where I record my time.  At the end of the day, I am required to record my total time worked each day in the ETS system.

12.     The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen.  I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.     Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.     At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working.  I deduct my unpaid meal break if I took one.

15.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day.  I am also trained how to calculate my time manually in tenth-hour increments.

16.     I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift.  To log off or restart my computer, I select the option that says log off or restart, I will wait to make sure the process is underway, then walk away.  I estimate this takes no more than 1 ½ minutes.

17.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS.  I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time.  The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     My supervisor reviews and approves my time card on a weekly basis.  My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes.  If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

20.     Sometimes, I have to attend classroom training.  When I attend training, I understand that I am required to record all time I spend in training.

21.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps.  Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system.  In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

22.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

23.     Even before the company began capturing our start and end of day time stamps via the log on and log-off/restart of the computer, I was still responsible for accurately recording my hours worked.  During that prior time period, I was also instructed to record all time worked.  I was trained that my day started as soon as sat down at my computer and attempted to turn on my computer.  Prior to the start of my shift, I would wait in a break room or common area.  I would not sit down at my work station until my shift was scheduled to start.  I recorded my start time as the time I sat down at my work station and attempted to log onto my computer or my phone, whichever occurred first.  I did not perform any work prior to logging onto my computer and my phone.

24.     During that time period, at the end of the day, I recorded my end time as the time I logged off or restarted my computer or logged off my phone, whichever occurred last.  I did not perform any work after logging off or restarting my computer and logging off my phone.

25.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones.  I have not felt the need to come in prior to my shift to turn on my computer or get ready to be on the phones.

26.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked.  I have never been asked to work off-the-clock, nor have I done so.

27.     I have not worked off the clock during the term of my employment.  I have recorded all the time that I have worked during the term of my employment.  I believe I have been properly paid for all hours worked during the term of my employment.

28.    I have been paid overtime compensation whenever I worked more than 40 hours in a week.

29.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June _16_, 2018, in Maricopa County, Arizona.


Melvin Miller

## DECLARATION OF CYNTHIA OZORNIO

I, Cynthia Ozornio, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Ave., Phoenix, AZ 85021.  I have been employed by GDIT in this position since October of 2013.

3.      I voluntary spoke with Kimberley Dempster Neilio, counsel for GDIT, with respect to the issues set forth in this Declaration.  She informed me that I was not required to speak with her and that I could end our conversation at any time.  She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.      I have received training on GDIT's timekeeping policies on several occasions, more than once per year.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.      I typically work 40-hours per week.  My current schedule is 11:15am – 7:45pm, Monday thru Friday.  Regardless of my schedule, I arrive at the call center about 10-15 minutes before my shift is scheduled to begin.  I typically wait in my car until about 5-minutes before my shift is scheduled to begin.  I usually stop at my locker before I go to the floor.  I do not sit down at my desk until my shift starts.

8.    I store my personal items in a locker provided by GDIT.  I am not allowed to have any paper, pens, electronics or most other personal items at my desk due to the sensitive nature of the information to which I have access.  All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.    After I sit down at my desk, the next thing I do is log onto my computer using my ID and password.  Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.    Occasionally, I am not able to log onto my computer because I have to change my password or have other system issues that prevent me from logging in.  This has happened only a couple times in the past year.  When this happens, if I can't resolve the issue on my own, I notify a supervisor, who will assist me with logging onto the computer.  I use the time I first attempted to log onto the computer as my start time and I am paid for that time.

11.    Once I log onto my computer, the Electronic Timekeeping System (ETS) system, where I record my time, automatically enters the time I log into my computer and it is displayed on the ETS screen.  I review the time the ETS records daily and believe the system accurately reflects the time I log into my computer.  At the end of the day, I am required to record my total time worked each day in the ETS system.

12.    Each day in which I work, I take an unpaid meal break.  The only exception is open enrollment, during which time we are given the option to work through lunch.  When that happens, I am paid for the time.  Other than during open enrollment, I take a full, 30-minute uninterrupted meal break away from my desk and work area.

13.    When there are 3-minutes left for my shift, I am able to go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls.  When I complete my call, I go into ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working.  I deduct my unpaid meal break if I took one.  In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

14.    My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day.  The calculator is useful.  I am also trained how to calculate my time manually in tenth-hour increments.

15.    I restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift.  To restart my computer, I select the option that says restart.  I watch the process begin, which takes just a few seconds, and then I walk away.

16.     The system automatically captures the time I restart my computer at the end of the day into ETS. I review the captured time on my next scheduled shift and know that it accurately reflects the time I restart my computer.

17.     If the computer time stamp system records more total time worked based on my log on and restart time than I record in ETS, the system prompts me to check my time and record the additional time. On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and restart time, the system allows me to input that time and save my time card. If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

18.     My supervisor reviews my time card at least a couple times per week and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

19.     Sometimes, I have to attend classroom training. When I attend training, I log onto a training computer. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

20.     On a couple of occasions, during very busy times like open enrollment, I have participated in "hot seating." Hot seating occurs when I am not assigned to a specific computer, but instead have to wait to be assigned to the next available computer. When have hot seated, I have arrived at the hot seating area and signed in to record the time I arrived. When I have hot seated, I used the time I arrived to the hot seating area as my start time.

21.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

22.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

23.     Even before the company began capturing our start and end of day time stamps via the log on and restart of the computer, I was still responsible for accurately recording my hours worked. During that prior time period, I was also instructed to record all time worked. I

was trained that my day started as soon as sat down at my computer and attempted to turn on my computer. Prior to the start of my shift, just like I do today, I would wait in my car or a common area. I would not sit down at my work station until my shift was scheduled to start. I recorded my start time as the time I sat down at my work station and attempted to log onto my computer or my phone, whichever occurred first. I did not perform any work prior to logging onto my computer and my phone.

24.     During that time period, at the end of the day, I recorded my end time as the time I restarted my computer or logged off my phone, whichever occurred last. I did not perform any work after logging off or restarting my computer and logging off my phone.

25.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones. I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked. I have never been asked to work off-the-clock, nor have I done so.

26.     Throughout my employment with GDIT, I have recorded all the time that I have worked and have been properly paid for all hours worked.

27.     I have been paid overtime compensation whenever I worked more than 40-hours in a week.

28.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on this 18th day of June 2018 in Maricopa County, Arizona.

Cynthia Ozornio

## DECLARATION OF TANIA PINON

I, Tania Pinon, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position since September 2013.

3.      I voluntary spoke with Aaron Lloyd, counsel for GDIT, with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could end our conversation at any time.  He also informed me that I would not receive any benefit for agreeing to speak with him and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with him and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek.  It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.      I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies once or twice a year since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.      I typically arrive at the call center right when my shift is scheduled to begin.  I do not sit down at my desk until my shift starts.

1

8.      I store my personal items in my vehicles.  I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password.  Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     Occasionally, I am not able to log onto my computer because I have to change my password or have other system issues that prevent me from logging in.  This has happened 3 times in the last year.  When this happens, I have to notify a supervisor, who will assist me with logging onto the computer, and I use the time I first attempted to log onto the computer as my start time.

11.     Once I log onto my computer, I have access to the Electronic Timekeeping System (ETS) system, which is where I record my time.  At the end of the day, I am required to record my total time worked each day in the ETS system.

12.     The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen.  I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.     Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.     At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working.  I deduct my unpaid meal break if I took one.  In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

15.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day.  I am also trained how to calculate my time manually in tenth-hour increments.

16.     I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift.  To log off or restart my computer, I select the option that says log off or restart, then walk away.  I do not wait for my computer to actually perform the log off or restart before leaving for the day.

17.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS.  I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

2

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and log-off/restart time, the system allows me to input that time and save my time card. If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

20.     My supervisor reviews and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

21.     Sometimes, I have to attend classroom training. When I attend training, I understand that I am required to record all time I spend in training.

22.     Sometimes, during very busy times, I participate in "hot seating." Hot seating occurs when I am not assigned to a specific computer, but instead have to wait to be assigned to the next available computer. When I am hot seating, I arrive at the hot seating area and I log into the phone system in the hot seating area using my unique code to record the time I arrived. I have never had to wait more than a minute or two in line to log into the phone system]. When I am hot seating, I use the time I arrived to the hot seating area as my start time.

23.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

24.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

25.     Even before the company began capturing our start and end of day time stamps via the log on and log-off/restart of the computer, I was still responsible for accurately recording my hours worked. During that prior time period, I was also instructed to record all time worked. I was trained that my day started as soon as sat down at my computer and attempted to turn on my computer. I would not sit down at my work station until my shift was scheduled to start. I recorded my start time as the time I sat down at my work station and attempted to log onto my computer or

my phone, whichever occurred first. I did not perform any work prior to logging onto my computer and my phone.

26.     During that time period, at the end of the day, I recorded my end time as the time I logged off or restarted my computer or logged off my phone, whichever occurred last. I did not perform any work after logging off or restarting my computer and logging off my phone.

27.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones. I have not felt the need to come in prior to my shift to turn on my computer or get ready to be on the phones.

28.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked. I have never been asked to work off-the-clock, nor have I done so.

29.     I have not worked off the clock during the term of my employment. I have recorded all the time that I have worked during the term of my employment. I believe I have been properly paid for all hours worked during the term of my employment.

30.     I have been paid overtime compensation whenever I worked more than 40 hours in a week. I do not believe I am owed overtime compensation for which I have not been paid.

31.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 14, 2018, in Maricopa County, Arizona.

Tania Pinon

## DECLARATION OF JENNIFER QUINTANILLA

I, Jennifer Quintanilla, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true. If called upon as a witness I could and would testify as to the truth of the facts below. I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Ave., Phoenix, AZ 85021. I have been employed by GDIT, or its predecessor, in this position since July of 2008.

3.      I voluntary spoke with Kimberley Dempster Neilio, counsel for GDIT, with respect to the issues set forth in this Declaration. She informed me that I was not required to speak with her and that I could end our conversation at any time. She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration. We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked. I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.      I have received training on GDIT's timekeeping policies on many occasions. I believe I have received training on the timekeeping policies at least once per year since the start of my employment. I know that I should record all time worked without exception. I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer. I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer. I also do not – and cannot – perform any work after I restart or log off a GDIT computer. I have had this same understanding throughout my employment at GDIT.

7.      I normally arrive at the call center at most 2-minutes before my shift is scheduled to begin. I do not arrive any earlier. I do not sit down at my desk until my shift starts.

8.      GDIT provides employees with lockers, but I leave my personal belongings in my vehicle.  I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access.  All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password.  Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     Occasionally, I am not able to log onto my computer because I have to change my password or have other system issues that prevent me from logging in.  This has happened only a couple of times in the last year.  When this happens, I have to notify a supervisor, who will assist me with logging onto the computer.  I use the time I first attempted to log onto the computer as my start time and am paid for the time.

11.     Once I log onto my computer, the Electronic Timekeeping System (ETS) system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen.  ETS is where I record my time.  At the end of the day, I am required to record my total time worked each day in the ETS system.  Each day I work, I review the time the system records as my log on time and believe it accurately reflects the time I logged into my computer.

12.     Each day in which I work more than four hours, I take an unpaid meal break.  I take a full, 30-minute uninterrupted meal break away from my desk and work area.

13.     When I have three minutes left before the end of my shift, I enter an AUX code on the phone that makes it inactive to prevent any further incoming calls.  I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working.  I deduct my unpaid meal break if I took one.  In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

14.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day.  I don't usually use the time calculator.  I am also trained how to calculate my time manually in tenth-hour increments.

15.     I restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift.  To restart my computer, I select the option that says restart.  I watch the restart process happen before I walk away.  The restart process takes less than 1-minute.

16.     The system automatically captures the time I restart my computer at the end of the day into ETS.  The following shift, I always review the time the system recorded as my restart time and believe it accurately reflects the time I restarted my computer each day.

17.     If the computer time stamp system records more total time worked based on my log on and restart time than I record in ETS, the system prompts me to check my time and record the additional time. On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and restart time, the system allows me to input that time and save my time card. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do. If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

18.     My supervisor reviews my time card daily and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

19.     Sometimes, I have to attend classroom training. When I attend training, I log onto a training computer. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer, and I understand that I am paid for that time.

20.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked. As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

21.     Even before the company began capturing our start and end of day time stamps via the log on and restart of the computer, I was still responsible for accurately recording my hours worked. During that prior time period, I was also instructed to record all time worked, but I did not always do so. It was my understanding that my work day started when I actually started logging onto the phone, and I did not always include the time I spent turning on my computer, checking emails, and logging onto NGD. I estimate that I spent 5-minutes, or less, a few shifts a week, turning on my computer, checking emails, and logging onto NGD. I did not include those few minutes in my hours worked. That was many years ago, though. Like my current practice, I did not typically arrive to the call center much before the start of my shift, so I did not do this every day I worked.

22.     During that time period, at the end of the day, I recorded my end time as the time I logged off my phone. I did not perform any work after logging off my phone.

23.     I have not been instructed to come in prior to my shift to turn on my computer or get ready to be on the phones since at least mid- 2016, which is approximately when we received several minutes of time to turn on our computers or get ready without those activities affecting our schedule adherence.

24.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked.  I have never been asked to work off-the-clock, nor have I done so.

25.     I have not worked off the clock at all since the current timekeeping system was implemented and only worked off the clock occasionally many years ago.  I have recorded all the time that I have worked and believe I have been properly paid for all hours worked since the current timekeeping system was implemented.

26.     I have been paid overtime compensation whenever I worked more than 40-hours in a week.

27.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 19, 2018 in Maricopa County, Arizona.

Jennifer Quintanilla

## <u>DECLARATION OF INES QUINTERO</u>

I, Ines Quintero, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position since September 2011 until 2014 and then started again August 1, 2016.

3.      I voluntary spoke with Dana Hooper, counsel for GDIT, with respect to the issues set forth in this Declaration.  She informed me that I was not required to speak with her and that I could end our conversation at any time. She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare or the Federally Facilitated Marketplaces.

5.      I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies when there was change in timekeeping and on a regular basis since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as logging off my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

1

7.      I typically arrive at the call center about 5-10 minutes before my shift is scheduled to begin to drop off items in my locker and drop off lunch, then I go to my desk about 1-2 minutes just before my shift is scheduled to begin. Then, I log in just as my shift starts.

8.      I store my personal items in a locker provided by GDIT. I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password. Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.      Once I log onto my computer, I open my emails, Empower, NGD, and check the Electronic Timekeeping System (ETS) to see if there are adjustments needed. At the end of the day, I am required to record my total time worked each day in the ETS system.

11.      The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen. I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

12.      Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

13.      At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working. I deduct my unpaid meal break if I took one. In entering my total time worked, I include what time I will finish working based on how long it will take me to finish my time card and log off the computer.

14.      My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day. I am also trained how to calculate my time manually in tenth-hour increments.

15.      I log off my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. To log off my computer, I select the option that says log off, then log off of my phone, and then walk away.

16.      The system automatically captures the time I log off at the end of the day into ETS. I have reviewed the time the system records when I log off my computer and believe it accurately reflects the time I log off my computer.

17.      If the computer time stamp system records more total time worked based on my log on and log-off time than I record in ETS, the system prompts me to check my time and record the

additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

18.     On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and log-off time, the system allows me to input that time and save my time card. If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

19.     My supervisor reviews and approves my time card on mostly a daily basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

20.     Sometimes, I have to attend classroom training. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer. When I log onto the training computer, I restart my training computer at the end of training and my regular computer is logged in and continues to capture all of the time I have been in training in the ETS system.

21.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

22.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and logging off my computer.

23.     During that time period, at the end of the day, I recorded my end time as the time I logged off my phone. After I logged off of my phone, I could be on my computer after logging off of my phone.

24.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones.

25.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked. I have never been asked to work off-the-clock, nor have I done so.

26.     I have not worked off the clock.  I have recorded all the time that I have worked.  I believe I have been properly paid for all hours worked.

27.     I have been paid overtime compensation whenever I worked more than 40 hours in a week.

28.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June __, 2018, in Maricopa County, Arizona.


_____
Ines Quintero

## <u>DECLARATION OF MARIA REYES</u>

I, Maria Reyes, declare and state as follows:

1.       I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.       I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Ave., Phoenix, AZ 85021.  I have been employed by GDIT in this position since November 2016.

3.       I voluntary spoke with Kimberley Dempster Neilio, counsel for GDIT, with respect to the issues set forth in this Declaration.  She informed me that I was not required to speak with her and that I could end our conversation at any time. She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.       As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning the Federally Facilitated Marketplaces.

5.       I have received training on GDIT's timekeeping policies on more than one occasion since I began my employment with the Company.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.       Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.       I currently work from 5:00am – 1:30pm, Monday – Friday.  Regardless of the shift I work, I typically arrive at the call center about 5-minutes, or less, before my shift is scheduled to begin.  I typically get to my desk right when my shift starts.

1

8.      GDIT provides lockers for personal items, but I leave my things in my car.  I am not allowed to have any paper, or writing items or personal items, other than snacks, at my desk due to the sensitive nature of the information to which I have access.  All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password.  Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     I have never had any issues logging onto my computer.

11.     Once I log onto my computer, the Electronic Timekeeping System (ETS) system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen.  ETS is the system where I record my time.  At the end of the day, I am required to record my total time worked each day in the ETS system.  At that point, I review the time stamp from the start of my shift to ensure it is accurate.  It has always shown the correct time.

12.     Each day in which I work more than four hours, I take an unpaid meal break.  I take a full, 30-minute uninterrupted meal break away from my desk and work area.  I also take two 15-minute paid breaks during each shift I work.

13.     When I have 3-minutes remaining in my shift, I enter an AUX code on the phone that makes it inactive to prevent any further incoming calls.  I complete my final call, logout of NGD and then open ETS.  I review my time card, enter my total time worked and allocate the time to the appropriate project and task on which I am working.  I deduct my unpaid meal break if I took one.  I use the desktop time calculator to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day.  I am also trained how to calculate my time manually in tenth-hour increments.  In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

14.     I restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift.  I also logout of the phone system.  To restart my computer, I select the option that says restart.  I wait to be sure the computer restarts before I walk away, which takes less than 1-minute.

15.     The system automatically captures the time I restart my computer at the end of the day into ETS.  During my next scheduled shift, I review the time the system recorded when I restarted my computer at the end of the prior shift.  I believe the system accurately reflects the time I restart my computer each day.

16.     If the computer time stamp system records more total time worked based on my log on and restart time than I record in ETS, the system prompts me to check my time and record the additional time.  On the other hand, if I record more time in ETS than the computer time

2

stamp system records based on my log-on and restart time, the system allows me to input that time and save my time card. If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

17.     My supervisor reviews and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

18.     Sometimes, I have to attend classroom training. When I attend training, I log onto a training computer, which also automatically enters my start time into ETS. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

19.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

20.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

21.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones. I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked. I have never been asked to work off-the-clock, nor have I done so.

22.     I have recorded all the time that I have worked and believe I have been properly paid for all hours worked. I have been paid overtime compensation whenever I worked more than 40-hours in a week.

23.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 19, 2018 in Maricopa County, Arizona.

Maria Reyes

3

## DECLARATION OF ANA RIOS

I, Ana Rios, declare and state as follows:

1.       I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.   If called upon as a witness I could and would testify as to the truth of the facts below.   I give this Declaration freely without payment or coercion of any kind.

2.       I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.   I have been employed by GDIT in this position since August 2016.

3.       I voluntary spoke with Aaron Lloyd, counsel for GDIT, with respect to the issues set forth in this Declaration.   He informed me that I was not required to speak with him and that I could end our conversation at any time.   He also informed me that I would not receive any benefit for agreeing to speak with him and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with him and/or submit this Declaration.   We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.   I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.       As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.       I have received training on GDIT's timekeeping policies.   I have been receiving training on GDIT's timekeeping policies approximately once every three months since the start of my employment.   I know that I should record all time worked without exception.   I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.       Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.   I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.   I also do not – and cannot – perform any work after I restart or log off a GDIT computer.   I have had this same understanding throughout my employment at GDIT.

7.       I typically arrive at the call center 10 minutes before my shift is scheduled to begin to wait in the common area until just before my shift is scheduled to begin.   I do not sit down at my desk until my shift starts.

1

8.      I store my personal items in a locker provided by GDIT. I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password. Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     Occasionally, I am not able to log onto my computer because I have to change my password or have other system issues that prevent me from logging in. This has happened 1 time during my employment. When this happened, I had to notify a supervisor, who assisted me with logging onto the computer. I was already logged in for the day as this was just when I returned from break.

11.     Once I log onto my computer, I am able to access the Electronic Timekeeping System (ETS) system, which is where I record my time. At the end of the day, I am required to record my total time worked each day in the ETS system.

12.     The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen. I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.     Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.     At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working. I deduct my unpaid meal break if I took one. In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

15.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day. I am also trained how to calculate my time manually in tenth-hour increments.

16.     I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. To log off or restart my computer, I select the option that says log off or restart, I make sure that the process is underway, and then I leave.

17.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS. I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     My supervisor reviews and approves my time card on a daily basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

20.     Sometimes, I have to attend classroom training. When I attend training, I understand that I am required to record all time I spend in training.

21.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones. I have not felt the need to come in prior to my shift to turn on my computer or get ready to be on the phones.

22.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked. I have never been asked to work off-the-clock, nor have I done so.

23.     I have not worked off the clock during the term of my employment. I have recorded all the time that I have worked during the term of my employment. I believe I have been properly paid for all hours worked during the term of my employment.

24.     I have never worked overtime or been paid overtime compensation.

25.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 19, 2018, in Maricopa County, Arizona.

Ana Rios

3

## DECLARATION OF DAVID RODRIGUEZ

I, David Rodriguez, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.   I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative (ISG) at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position since August 2013.

3.      I voluntary spoke with Aaron Lloyd, counsel for GDIT, with respect to the issues set forth in this Declaration. He informed me that I was not required to speak with him and that I could end our conversation at any time. He also informed me that I would not receive any benefit for agreeing to speak with him and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with him and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.      I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies approximately quarterly since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer. I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.      I typically arrive at the call center 5-10 minutes before my shift is scheduled to begin. I try to find parking and generally stay in the common area before I go to my desk. I do not sit down at my desk until my shift starts.

1

8.      I store my personal items in a locker provided by GDIT.  I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access.  All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password.  Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     Occasionally, I am not able to log onto my computer because I have to change my password or have other system issues that prevent me from logging in.  This has happened 1-2 times in the last year.  When this happens, I login in on the phone and I have to notify a supervisor, who will assist me with logging onto the computer, and I use the time I first attempted to log onto the computer as my start time.

11.     Once I log onto my computer, I have access to the Electronic Timekeeping System (ETS) system, which is where I record my time.  At the end of the day, I am required to record my total time worked each day in the ETS system.

12.     The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen.  I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.     Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.     At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working.  I deduct my unpaid meal break if I took one.  In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

15.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day.  I am also trained how to calculate my time manually in tenth-hour increments.

16.     I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift.  To log off or restart my computer, I select the option that says log off or restart, make sure the process has started, then walk away.  I do not wait for my computer to actually perform the log off or restart before leaving for the day.

17.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS.  I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

2

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     My supervisor reviews and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

20.     Sometimes, I have to attend classroom training. When I attend training, I understand that I am required to record all time I spend in training.

21.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

22.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

23.     Even before the company began capturing our start and end of day time stamps via the log on and log-off/restart of the computer, I was still responsible for accurately recording my hours worked. During that prior time period, I was also instructed to record all time worked. I was trained that my day started as soon as sat down at my computer and attempted to turn on my computer. Prior to the start of my shift, I would wait in a break room or common area. I would not sit down at my work station until my shift was scheduled to start. I recorded my start time as the time I sat down at my work station and attempted to log onto my computer or my phone, whichever occurred first. I did not perform any work prior to logging onto my computer and my phone.

24.     During that time period, at the end of the day, I recorded my end time as the time I logged off or restarted my computer or logged off my phone, whichever occurred last. I did not perform any work after logging off or restarting my computer and logging off my phone.

25.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones. I have not felt the need to come in prior to my shift to turn on my computer or get ready to be on the phones.

3

26.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked.  I have never been asked to work off-the-clock, nor have I done so.

27.     I have not worked off the clock during the term of my employment.  I have recorded all the time that I have worked during the term of my employment.  I believe I have been properly paid for all hours worked during my employment.

28.     I have been paid overtime compensation whenever I worked more than 40 hours in a week.

29.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June _14_ , 2018, in Maricopa County, Arizona.

David Rodriguez

4

## DECLARATION OF ALEJANDRO SALGADO

I, Alejandro Salgado, declare and state as follows:

1.     I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.     I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Ave., Phoenix, AZ 85021.  I have been employed by GDIT in this position since October of 2013.

3.     I voluntary spoke with Kimberley Dempster Neilio, counsel for GDIT, with respect to the issues set forth in this Declaration.  She informed me that I was not required to speak with her and that I could end our conversation at any time.  She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.     As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare or the Federally Facilitated Marketplaces.

5.     I have received training on GDIT's timekeeping policies on more than one occasion.  I have had the training as recently as this year.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.     Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.     I currently work from 8:30am – 5pm, Monday through Friday.  I typically arrive at the call center 5-minutes before my shift is scheduled to begin.  I usually stop at my locker to get my headset and to leave any personal items and then wait in the break room until just before my shift is scheduled to begin.  I do not sit down at my desk until my shift starts.

1

8.      I store my personal items in a locker provided by GDIT.  I am not allowed to have any paper, pens or personal items at my desk due to the sensitive nature of the information to which I have access.  All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password.  Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     Occasionally, I am not able to log onto my computer because I have to change my password or have other system issues that prevent me from logging in.  This has happened approximately twice in the last year.  When this happens, I have to notify a supervisor, who will assist me with logging onto the computer.  Any time this has happened I have used the time I first attempted to log onto the computer as my start time for the day and I am paid for that time even though I was not taking calls.

11.     Once I log onto my computer, the Electronic Timekeeping System (ETS) system, where I record my time, automatically enters the time I log into my computer and it is displayed on the ETS screen.  I review the time the ETS records daily and believe the system accurately reflects the time I log into my computer.  At the end of the day, I am required to record my total time worked each day in the ETS system.

12.     I have always worked full-time hours at GDIT.  Each day in which I work, I take an unpaid meal break.  I take a full, 30-minute uninterrupted meal break away from my desk and work area.

13.     Toward the end of my shift, I enter an AUX code on the phone that makes it inactive to prevent any further incoming calls.  I complete my last call and then go into ETS to review my time card.  I enter my total time worked and allocate it to the appropriate project and task on which I am working.  I deduct my unpaid meal break if I took one.  In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

14.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day.  I am also trained how to calculate my time manually in tenth-hour increments.

15.     I restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift.  To restart my computer, I select the option that says log off or restart.  I watch the restart occur and then walk away.  It takes only about 10-seconds to restart.

2

16.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS. I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

17.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

18.     On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and log-off/restart time, the system allows me to input that time and save my time card. If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

19.     My supervisor reviews my time card every day and approves it on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

20.     Sometimes, I have to attend classroom training. When I attend training, I log onto a training computer, which also automatically enters my start time into ETS. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

21.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

22.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

23.     Even before the company began capturing our start and end of day time stamps via the log on and restart of the computer, I was still responsible for accurately recording my hours worked. During that prior time period, I was also instructed to record all time worked. I was trained that my day started as soon as sat down at my computer and attempted to turn on my computer. Prior to the start of my shift, I would wait in the break room. I would not sit down at my work station until my shift was scheduled to start. I recorded my start time as the time I sat

down at my work station and attempted to log onto my computer or my phone, whichever occurred first. I did not perform any work prior to logging onto my computer and my phone.

24.     During that time period, at the end of the day, I recorded my end time as the time I restarted my computer or logged off my phone, whichever occurred last. I did not perform any work after logging off or restarting my computer and logging off my phone.

25.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones, nor have I felt the need to come in prior to my shift to prepare for calls.

26.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked. I have never been asked to work off-the-clock, nor have I ever done so.

27.     I have recorded all the time that I have worked. I believe I have always been properly paid by GDIT for all hours worked.

28.     I have been paid overtime compensation whenever I worked more than 40-hours in a week.

29.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 18, 2018 in Maricopa County, Arizona.

Alejandro Salgado

## DECLARATION OF MIYA SANTIAGO

I, Miya Santiago, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Ave., Phoenix, AZ 85021.  I have been employed by GDIT in this position since July of 2008.

3.      I voluntary spoke with Kimberley Dempster Neilio, counsel for GDIT, with respect to the issues set forth in this Declaration.  She informed me that I was not required to speak with her and that I could end our conversation at any time.  She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.      I have received training on GDIT's timekeeping policies several times over the course of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.      I work full-time hours.  My current shift is 6:30am – 3:00pm, Monday – Friday.  Regardless of the shift I work, I typically arrive at the call center about 10-minutes before my shift is scheduled to begin.  I usually sit in my car and then walk into the call center about 5-minutes before my shift starts.  I go to my desk just before my shift starts and log onto my

computer about 2-3 minutes before my start time. I am paid from the time I log onto my computer.

8.      I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access. So, I do not bring personal items into the call center. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password. Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.      Occasionally, I am not able to log onto my computer because I have to change my password or have other system issues that prevent me from logging in. This has happened fewer than 5 times in the last year. When this happens, I have to notify a supervisor, who will assist me with logging onto the computer. I use the time I first attempted to log onto the computer as my start time and am paid for that time.

11.      Once I log onto my computer, the Electronic Timekeeping System (ETS) system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen. ETS is where I record my time. I review the time the system records when I log into my computer each day and see that it accurately reflects the time I logged into my computer. At the end of the day, I am required to record my total time worked each day in the ETS system.

12.      Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

13.      Toward the end of my shift each day, I enter an AUX code on the phone that makes it inactive to prevent any further incoming calls. Once I finish my final call, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working. I deduct my unpaid meal break if I took one. In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

14.      My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day. I don't typically use the calculator. I am also trained how to calculate my time manually in tenth-hour increments.

15.      I restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. I also log off of the phone system. To restart my computer, I select the option that says restart. I wait for the blue screen to show, which indicates that the restart process has started, then I walk away. The restart process takes about 30-seconds.

16.     The system automatically captures the time I restart my computer at the end of the day into ETS.  I review the time the system records when I restart my computer at the end of each shift and believe the system accurately reflects the time I restart my computer.

17.     If the computer time stamp system records more total time worked based on my log on and restart time than I record in ETS, the system prompts me to check my time and record the additional time.  On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and restart time, the system allows me to input that time and save my time card.  If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

18.     My supervisor reviews my time card every other day and approves my time card on a weekly basis.  My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes.  My supervisor cannot actually make any changes to my timecard.   With a single exception which occurred recently, any time my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

19.     Sometimes, I have to attend classroom training.  When I attend training, I log onto a training computer, which automatically enters my training end time into ETS. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

20.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps.  Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

21.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

22.     Even before the company began capturing our start and end of day time stamps via the log on and restart of the computer, I was still responsible for accurately recording my hours worked.  As I do today, I would arrive to the call center just before the start of my shift.  I would not sit down at my work station until my shift was scheduled to start.  I recorded my start time as the time I sat down at my work station and attempted to log onto my computer or my phone, whichever occurred first.  I did not perform any work prior to logging onto my computer and my phone.

23.     During that time period, at the end of the day, I recorded my end time as the time I restarted my computer or logged off my phone, whichever occurred last. I did not perform any work after logging off or restarting my computer and logging off my phone.

24.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones. I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked. I have never been asked to work off-the-clock, nor have I done so.

25.     I have recorded all the time that I have worked and believe I have been properly paid for all hours worked.

26.     I have been paid overtime compensation whenever I worked more than 40-hours in a week.

27.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 19, 2018 in Maricopa County, Arizona.

Miya Santiago

## DECLARATION OF ZAFIRO SORIANO

I, Zafiro Soriano, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Ave., Phoenix, AZ 85021.  I have been employed by GDIT in this position since September of 2015.

3.      I voluntary spoke with Kimberley Dempster Neilio, counsel for GDIT, with respect to the issues set forth in this Declaration.  She informed me that I was not required to speak with her and that I could end our conversation at any time. She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare or the Federally Facilitated Marketplaces.

5.      I have received training on GDIT's timekeeping policies on at least annual basis since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.      I typically arrive at the call center about 10-minutes before my shift is scheduled to begin.  I typically stop at the restroom and at my locker until just before my shift is scheduled to begin.  I do not sit down at my desk until my shift starts.

1

8.      I store my personal items in a locker provided by GDIT.  I am not allowed to have any paper, pens or personal items at my desk due to the sensitive nature of the information to which I have access.  All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password.  Generally, my computer is always on.  I do not have to boot up or turn it on, and instead just have to wake it up from "sleep" mode by moving the mouse then and log in.

10.     Occasionally, I am not able to log onto my computer because I have to change my password or have other system issues that prevent me from logging in.  This has happened only about one time in the last year.  When this happens, I have to notify a supervisor, who will assist me with logging onto the computer.  I use the time I first attempted to log onto the computer as my start time.

11.     Once I log onto my computer, the Electronic Timekeeping System (ETS) system automatically captures the time I log into my computer and it is displayed on the ETS screen. ETS is where I record my time.  I review the time the system records soon after I log into my computer each day and believe it has always accurately reflected the time I log into my computer.  At the end of the day, I am required to record my total time worked each day in the ETS system.

12.     I typically around 40-hours per week.  Each day in which I work, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

13.     When I have 3-minutes remaining before the end of my shift, I enter an AUX code on the phone that makes it inactive to prevent any further incoming calls.  I finish my final call and then go back into ETS to review my time card and enter my total time worked, which I allocate to appropriate projects and tasks on which I worked.  I deduct my unpaid meal break if I took one.  In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

14.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day.  I am also trained how to calculate my time manually in tenth-hour increments.

15.     I restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift.  To restart my computer, I select the option that says restart.  I sometimes watch the computer restart, which takes maybe one minute, and I sometimes just walk away.

16.     The system automatically captures the time I restart my computer at the end of the day into ETS.  At the start of my next scheduled shift, I review the time the system records when I restart my computer and believe it accurately reflects the time I restarted my computer on the previous shift.

17.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time.  The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

18.     On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and log-off/restart time, the system allows me to input that time and save my time card.  If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

19.     My supervisor reviews my time daily and approves my time card on a weekly basis.  My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes.  My supervisor cannot actually make any changes to my timecard.  If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

20.     Sometimes, I have to attend classroom training.  When I attend training, I log onto a training computer, which also automatically enters my start time into ETS.  When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

21.     Sometimes, during very busy times, I participate in "hot seating."  Hot seating occurs when I am not assigned to a specific computer, but instead have to wait to be assigned to the next available computer.  When I have participated in hot seating, I arrived at the hot seating area and logged into the phone system using my unique code to record the time I arrived.  I have never had to wait more than 15-minutes, or so, to actually take calls.  I have always been paid for the time I waited.  When I have hot seated, I used the time I arrived to the hot seating area as my start time.  I only participated in hot seating when I first began my employment with GDIT.

22.     Immediately prior to the current timekeeping system, I generally recorded my time the same way even though the ETS system did not show my beginning and end of the day computer time stamps.  Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system.  In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

23.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

24.     Even before the company began capturing our start and end of day time stamps via the log on and log-off/restart of the computer, I was still responsible for accurately recording my hours worked.  During that prior time period, I was also instructed to record all time worked. I was trained that my day started as soon as sat down at my computer and attempted to turn on my computer.  My routine was the same in that, I would wait go to the restroom and my locker before the start of my shift.  I would not sit down at my work station until my shift was scheduled to start.  I recorded my start time as the time I sat down at my work station and attempted to log onto my computer or my phone, whichever occurred first.  I did not perform any work prior to logging onto my computer and my phone.

25.     During that time period, at the end of the day, I recorded my end time as the time I restarted my computer or logged off my phone, whichever occurred last.  I did not perform any work after restarting my computer and logging off my phone, which I normally did at about the same time.

26.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones.  I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked.  I have never been asked to work off-the-clock, nor have I done so.

27.     I have recorded all the time that I have worked.  I believe I have been properly paid for all hours worked throughout my employment with GDIT.

28.     I have been paid overtime compensation whenever I worked more than 40-hours in a week.

29.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 18, 2018 in Maricopa County, Arizona.

Zafiro Soriano

## DECLARATION OF YVONNE TOLLE

I, Yvonne Tolle, declare and state as follows:

1.    I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.   I give this Declaration freely without payment or coercion of any kind.

2.    I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position since May 2011. ·

3.    I voluntary spoke with Aaron Lloyd, counsel for GDIT, with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could end our conversation at any time. He also informed me that I would not receive any benefit for agreeing to speak with him and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with him and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.    As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.    I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies approximately twice a year more recently and approximately annually closer to the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.    Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.    I typically arrive at the call center 10 minutes before my shift is scheduled to begin to wait in the common area until just before my shift is scheduled to begin.  I do not sit down at my desk until my shift starts.

8.     I store my personal items in a locker provided by GDIT.  I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access.  All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.     After I sit down at my desk, the next thing I do is log onto my computer using my ID and password.  Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     Occasionally, I am not able to log onto my computer because I have to change my password or have other system issues that prevent me from logging in.  This has happened approximately two times in the last year.  When this happens, I have to notify a supervisor, who will assist me with logging onto the computer, and I use the time I first attempted to log onto the computer as my start time.

11.     Once I log onto my computer, I am able to navigate to the Electronic Timekeeping System (ETS) system, which is where I record my time.  At the end of the day, I am required to record my total time worked each day in the ETS system.

12.     The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen.  I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.     Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.     At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working.  I deduct my unpaid meal break if I took one. In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

15.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day.  I am also trained how to calculate my time manually in tenth-hour increments.

16.     I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift.  To log off or restart my computer, I select the option that says log off or restart, then I wait to make sure the process has started, then I leave.

17.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS.  I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     My supervisor reviews and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

20.     Sometimes, I have to attend classroom training. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

21.     Even before the company began capturing our start and end of day time stamps via the log on and log-off/restart of the computer, I was still responsible for accurately recording my hours worked. During that prior time period, I was also instructed to record all time worked. I was trained that my day started as soon as sat down at my computer and attempted to turn on my computer. Prior to the start of my shift, I would wait in a break room or common area. I would not sit down at my work station until my shift was scheduled to start. I recorded my start time as the time I sat down at my work station and attempted to log onto my computer or my phone, whichever occurred first. I did not perform any work prior to logging onto my computer and my phone.

22.     During that time period, at the end of the day, I recorded my end time as the time I logged off or restarted my computer or logged off my phone, whichever occurred last. I did not perform any work after logging off or restarting my computer and logging off my phone.

23.     Under all timekeeping systems since the start of my employment, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

24.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones. I have not felt the need to come in prior to my shift to turn on my computer or get ready to be on the phones.

25.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked. I have never been asked to work off-the-clock, nor have I done so.

26.     I have not worked off the clock during the term of my employment. I have recorded all the time that I have worked during the term of my employment. I believe I have been properly paid for all hours worked during the term of my employment.

27.    I have been paid overtime compensation whenever I worked more than 40 hours in a week.  I believe I have been paid all overtime compensation that I am entitled to.

28.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 18, 2018, in Maricopa County, Arizona.


Yvonne Tolle

## DECLARATION OF DARLYN VALENZUELA

I, Darlyn Valenzuela, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position since July 2015.

3.      I voluntary spoke with Aaron Lloyd, counsel for GDIT, with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could end our conversation at any time. He also informed me that I would not receive any benefit for agreeing to speak with him and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with him and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.      I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies annually since the start of my employment. I know that I should record all time worked without exception. I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.      I typically arrive at the call center 5 minutes before my shift is scheduled to begin and wait in my vehicle until just before my shift is scheduled to begin.  I do not sit down at my desk until my shift starts.

1

8.    I store my personal items in my vehicle.  I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.    After I sit down at my desk, the next thing I do is log onto my computer using my ID and password.  Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.    I have never had any issues logging onto my computer.

11.    Once I log onto my computer, I have access to the Electronic Timekeeping System (ETS) system, which is where I record my time.  At the end of the day, I am required to record my total time worked each day in the ETS system.

12.    The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen.  I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.    Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.    At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working.  I deduct my unpaid meal break if I took one.  In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

15.    My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day.  I am also trained how to calculate my time manually in tenth-hour increments.

16.    I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift.  To log off or restart my computer, I select the option that says log off or restart and make sure the process has started, then walk away.  I do not wait for my computer to actually perform the log off or restart before leaving for the day.

17.    The system automatically captures the time I log off or restart my computer at the end of the day into ETS.  I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

18.    If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and

2

record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     My supervisor reviews and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

20.     Sometimes, I have to attend classroom training. When I attend training, I log onto a training computer, which also automatically enters my start time into ETS. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

21.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

22.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

23.     Even before the company began capturing our start and end of day time stamps via the log on and log-off/restart of the computer, I was still responsible for accurately recording my hours worked. During that prior time period, I was also instructed to record all time worked. I was trained that my day started as soon as I sat down at my computer and attempted to turn on my computer. Prior to the start of my shift, I would wait in my vehicle. I would not sit down at my work station until my shift was scheduled to start. I recorded my start time as the time I sat down at my work station and attempted to log onto my computer or my phone, whichever occurred first. I did not perform any work prior to logging onto my computer and my phone.

24.     During that time period, at the end of the day, I recorded my end time as the time I logged off or restarted my computer or logged off my phone, whichever occurred last. I did not perform any work after logging off or restarting my computer and logging off my phone.

25.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones. I have not or felt the need to come in prior to my shift to turn on my computer or get ready to be on the phones.

26.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked.  I have never been asked to work off-the-clock, nor have I done so.

27.     I have not worked off the clock during the term of my employment.  I have recorded all the time that I have worked during the term of my employment.  I believe I have been properly paid for all hours worked during the term of my employment.

28.     I have been paid overtime compensation whenever I worked more than 40 hours in a week.  I believe I have been paid all overtime compensation I am entitled to.

29.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 18 , 2018, in Maricopa County, Arizona.


Darlyn Valenzuela

4

## DECLARATION OF IMELDA RONCES VEGA

I, Imelda Ronces Vega, declare and state as follows:

1.     I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.   I give this Declaration freely without payment or coercion of any kind.

2.     I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Avenue, Phoenix Arizona 85021.  I have been employed by GDIT in this position since August 2014.

3.     I voluntary spoke with Aaron Lloyd, counsel for GDIT, with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could end our conversation at any time. He also informed me that I would not receive any benefit for agreeing to speak with him and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with him and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.     As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning the Federally Facilitated Marketplaces.

5.     I have received training on GDIT's timekeeping policies.  I have been receiving training on GDIT's timekeeping policies approximately twice a year since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.     Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.     I typically arrive at the call center 5-10 minutes before my shift is scheduled to begin to wait in the common area until just before my shift is scheduled to begin.  I do not sit down at my desk until my shift starts.

1

8.     I store my personal items in a locker provided by GDIT.  I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access.  All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.     After I sit down at my desk, the next thing I do is log onto my computer using my ID and password.  Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     Occasionally, I am not able to log onto my computer because I have to change my password or have other system issues that prevent me from logging in.  This has happened approximately 2 times in the last year.  When this happens, I have to notify a supervisor, who will assist me with logging onto the computer, and I use the time I first attempted to log onto the computer as my start time.

11.     Once I log onto my computer, I am able to navigate to the Electronic Timekeeping System (ETS) system, which is where I record my time.  At the end of the day, I am required to record my total time worked each day in the ETS system.

12.     The system automatically enters the time I log into my computer into ETS and it is displayed on the ETS screen.  I have reviewed the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.     Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.     At the end of each day, after I go into an auxiliary mode on the phone that makes it inactive to prevent any further incoming calls, I open ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working.  I deduct my unpaid meal break if I took one.  In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

15.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day.  I am also trained how to calculate my time manually in tenth-hour increments.

16.     I log off or restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift.  To log off or restart my computer, I select the option that says log off or restart.  I do wait for my computer to actually perform the log off or restart before leaving for the day.  I estimate that this takes about 30 seconds.

17.     The system automatically captures the time I log off or restart my computer at the end of the day into ETS. I have reviewed the time the system records when I log off or restart my computer and believe it accurately reflects the time I log off or restart my computer.

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time. The ETS system will not allow me to save my time card until I resolve the issue if the computer time stamp system records more time than I do.

19.     My supervisor reviews and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

20.     Sometimes, I have to attend classroom training. When I attend training, I log onto a training computer, which also automatically enters my start time into ETS. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

21.     Sometimes, during very busy times, I have participated in "hot seating." This occurred early in my employment. Hot seating occurs when I am not assigned to a specific computer, but instead have to wait to be assigned to the next available computer. When I am hot seating, I arrive at the hot seating area and sign in to record the time I arrived/I log into the phone system in the hot seating area using my unique code to record the time I arrived. I have never had to wait more than a minute or two in line to sign in on the sign in sheet/log into the phone system. When I am hot seating, I use the time I arrived to the hot seating area as my start time.

22.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

23.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

24.     Even before the company began capturing our start and end of day time stamps via the log on and log-off/restart of the computer, I was still responsible for accurately recording my hours worked. During that prior time period, I was also instructed to record all time worked. I was trained that my day started as soon as sat down at my computer and attempted to turn on my computer. Prior to the start of my shift, I would wait in a break room or common area. I would not sit down at my work station until my shift was scheduled to start. I recorded my start time as

3

the time I sat down at my work station and attempted to log onto my computer or my phone, whichever occurred first. I did not perform any work prior to logging onto my computer and my phone.

25.     During that time period, at the end of the day, I recorded my end time as the time I logged off or restarted my computer or logged off my phone, whichever occurred last. I did not perform any work after logging off or restarting my computer and logging off my phone.

26.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones. I have never felt the need to come in prior to my shift to turn on my computer or get ready to be on the phones.

27.     I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked. I have never been asked to work off-the-clock, nor have I done so.

28.     I have not worked off the clock during the term of my employment. I have recorded all the time that I have worked during the term my employment. I believe I have been properly paid for all hours worked during the term of my employment.

29.     I have been paid overtime compensation whenever I worked more than 40 hours in a week. I do not believe I am owed any overtime compensation.

30.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 18, 2018, in Maricopa County, Arizona.


Imelda Ronces Vega

4

## DECLARATION OF CATHY VILLALOBOS

I, Cathy Villalobos, declare and state as follows:

1.     I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.     I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Ave., Phoenix, AZ 85021.  I have been employed by GDIT in this position since August of 2008.

3.     I voluntary spoke with Kimberley Dempster Neilio, counsel for GDIT, with respect to the issues set forth in this Declaration.  She informed me that I was not required to speak with her and that I could end our conversation at any time.  She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.     As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.     I have received training on GDIT's timekeeping policies on at least an annual basis since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.     Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not -- and cannot -- perform any work unless and until I am logged onto a GDIT computer.  I also do not -- and cannot -- perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.     I typically arrive at the call center about 15-minutes before my shift is scheduled to begin.  I sit in my car until about 3-4 minutes before my shift is scheduled to begin.  I stop at my locker before I go to my desk.  I do not sit down at my desk until 1 – 2 minutes before my shift starts.

1

8.      I store my personal items in a locker provided by GDIT. I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access. I can have water and approved snacks. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password. Generally, I do not have to boot up or turn on my computer, and instead just have to move the mouse to wake it up from "sleep" mode and log in.

*10.     I have had a few instances in which I was not able to log onto my computer because I had to change my password or had other system issues that prevented me from logging in. This has happened maybe only one or two times in the last two years. When this has happened, I have notified a supervisor, who has assisted me with logging onto the computer. I used the time I first attempted to log onto the computer as my start time have been paid for that time.*

11.     Once I log onto my computer, the Electronic Timekeeping System (ETS) system, where I record my time, automatically enters the time I log into my computer and it is displayed on the ETS screen. I review the time the ETS records daily and believe the system accurately reflects the time I log into my computer. At the end of the day, I am required to record my total time worked each day in the ETS system.

12.     I typically work 8-hours each day that I work. Each day in which I work, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

13.     While I am on my last call of the day, I enter an AUX code on the phone that makes it inactive to prevent any further incoming calls. When I complete my last call, I close out the NGD system. I then go into ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working. I log my unpaid meal break if I took one. In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

14.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day. I don't typically use the calculator, though. I have been trained on how to calculate my time manually in tenth-hour increments.

15.     I restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. To restart my computer, I select the option that says restart. I typically watch the restart occur before I walk away. The restart only takes about 1-minute.

16.     The system automatically captures the time I restart my computer at the end of the day into ETS.  When I return for my next scheduled shift, I review the time the system records when I restarted my computer the prior shift.  I believe the system accurately reflects the time I restart my computer each shift.

17.     If the computer time stamp system records more total time worked based on my log on and restart time than I record in ETS, the system prompts me to check my time and record the additional time.  On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and restart time, the system allows me to input that time and save my time card.  If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.  The ETS system will not allow me to continue adding time to the time record until I resolve the issue if the computer time stamp system records more time than I do.

18.     My supervisor reviews and approves my time card on at least a weekly basis.  My supervisor may discuss or ask me to make changes to my time card, but I go into my time card and make the changes.  If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

19.     Sometimes, I have to attend classroom training.  When I attend training, I log onto a training computer.  When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

20.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps.  Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system.  In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

21.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

22.     Even before the company began capturing our start and end of day time stamps via the log on and log-off/restart of the computer, I was still responsible for accurately recording my hours worked.  During that prior time period, I was also instructed to record all time worked.  I was trained that my day started as soon as sat down at my computer and attempted to turn on my computer.  Prior to the start of my shift, I would wait in my car or a common area.  I would not sit down at my work station until just before my shift was scheduled to start.  I recorded my start time as the time I sat down at my work station and attempted to log onto my computer or

my phone, whichever occurred first. I did not perform any work prior to logging onto my computer and my phone.

23.     During that time period, at the end of the day, I recorded my end time as the time I restarted my computer or logged off my phone, whichever occurred last. I did not perform any work after restarting my computer and logging off my phone.

24.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones. I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked. During my employment, I have never been asked to work off-the-clock, nor have I done so.

25.     I have recorded all the time that I have worked and have been properly paid for all hours worked throughout my employment with GDIT.

26.     I have been paid overtime compensation whenever I worked more than 40-hours in a week.

27.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 18, 2018 in Maricopa County, Arizona.

Cathy Villalobos

4

## DECLARATION OF ASHLYN WILLIAMS

I, Ashlyn Williams, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Ave., Phoenix, AZ 85021.  I have been employed by GDIT in this position since August of 2016.

3.      I voluntary spoke with Kimberley Dempster Neilio, counsel for GDIT, with respect to the issues set forth in this Declaration.  She informed me that I was not required to speak with her and that I could end our conversation at any time.  She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning Medicare.

5.      I have received training on GDIT's timekeeping policies on multiple occasions, approximately twice per year, since the start of my employment.  I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.      I work full-time.  My current schedule is 12:00pm – 8:30pm, Sunday thru Thursday.  Regardless of my schedule, I typically arrive at the call center about 20-30 minutes before my shift is scheduled to begin.  I typically go to my locker to retrieve my water bottle and head set.  I set those items on my desk and then wait in the break area until about 2 – 3 minutes

before my shift is scheduled to begin. At that point, I go to my desk. I connect my head set and wipe my desk off before logging onto my computer.

8.      I store my personal items in a locker provided by GDIT. I am not allowed to have any paper or personal items at my desk due to the sensitive nature of the information to which I have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk and wipe it off, the next thing I do is log onto my computer using my ID and password. Generally, I do not have to boot up or turn on my computer, and instead just have to wake it up from "sleep" mode and log in.

10.     Occasionally, I am not able to log onto my computer because I have to change my password or have other system issues that prevent me from logging in. I believe this has happened only once in the last year. When this has happened, I notified a supervisor, who assisted me with logging onto the computer, and I used the time I first attempted to log onto the computer as my start time. To do so, I sent my supervisor an "exception."

11.     Once I log onto my computer, the Electronic Timekeeping System (ETS) system, where I record my time, automatically enters the time I log into my computer and it is displayed on the ETS screen. I review the time the ETS records daily, usually at the end of my shift, and believe the system accurately reflects the time I log into my computer. At the end of the day, I am required to record my total time worked each day in the ETS system.

12.     Each day in which I work more than four hours, I take an unpaid meal break. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

13.     Three minutes before my shift ends each day, I enter an AUX code on the phone that makes it inactive to prevent any further incoming calls. After I finish my last call, I log out of NGD, review e-mails and then review my time card in ETS. I enter my total time worked and allocate it to the appropriate project and task on which I am working. I deduct my unpaid meal break if I took one. In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

14.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day. I am also trained how to calculate my time manually in tenth-hour increments.

15.     I restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. I also log off the phone system. To restart my computer, I select the option that says restart. I watch the computer restart before I walk away, which takes less than 1-minute.

16.     The system automatically captures the time restart my computer at the end of the day into ETS. I review the time the system records during my next shift and believe the system accurately reflects the time I restart my computer.

17.     If the computer time stamp system records more total time worked based on my log on and restart time than I record in ETS, the system prompts me to check my time and record the additional time. On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and restart time, the system allows me to input that time and save my time card. I am required to have all hours allocated. If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

18.     My supervisor reviews and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

19.     Sometimes, I have to attend classroom training. When I attend training, I log onto a training computer. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

20.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

21.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

22.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones. I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked. I have never been asked to work off-the-clock, nor have I done so.

23.     Throughout my employment with GDIT, I have recorded all the time that I have worked and have been properly paid for all hours worked.

24.     I have been paid overtime compensation whenever I worked more than 40-hours in a week.

25.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on the 18th day of June 2018 in Maricopa County, Arizona.

Ashlyn Williams

## DECLARATION OF BLANCA ZAMORA

I, Blanca Zamora, declare and state as follows:

1.      I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein, except those statements based on information and belief, and as to those statements, I believe them to be true.  If called upon as a witness I could and would testify as to the truth of the facts below.  I give this Declaration freely without payment or coercion of any kind.

2.      I am employed by General Dynamics Information Technology, Inc. ("GDIT") as a Customer Service Representative at its call center located at 8900 N. 22nd Ave., Phoenix, AZ 85021.  I have been employed by GDIT in this position since August of 2016.

3.      I voluntary spoke with Kimberley Dempster Neilio, counsel for GDIT, with respect to the issues set forth in this Declaration.  She informed me that I was not required to speak with her and that I could end our conversation at any time.  She also informed me that I would not receive any benefit for agreeing to speak with her and submit this Declaration, and that similarly no action would be taken against me if I chose not to speak with her and/or submit this Declaration.  We spoke in a quiet location and I focused on, and carefully considered, all of the questions asked.  I understand that this Declaration may be used for purposes of defending GDIT from claims asserted in a lawsuit filed by a CSR on behalf of herself and other similarly situated employees, Devina Mills v. General Dynamics Information Technology, Inc. and General Dynamics Corp., 8:18-cv-00855-CEH-TGW, alleging that they have not been paid appropriately for all hours worked over 40 hours in a workweek. It is my decision to submit this Declaration; I am under no obligation to do so, but do so voluntarily and of my own free will.

4.      As a CSR on a GDIT government contract, my duties primarily consist of answering phone calls in which I assist callers with questions and issues concerning the Federally Facilitated Marketplaces.

5.      I received training on GDIT's timekeeping policies when I began my employment.  I have received training at least one additional time and get regular refreshers about signing time cards.  I also rely on my supervisor if I have any questions about timekeeping. I know that I should record all time worked without exception.  I know this based on the training that I received, as well as additional policies that I have been shown or have access to during my employment.

6.      Based on GDIT's timekeeping training, I understand that my work day starts as soon as I engage in any work activity, such as attempting to turn on my computer or log onto the system, and ends after I complete my last work activity, such as restarting my computer.  I do not – and cannot – perform any work unless and until I am logged onto a GDIT computer.  I also do not – and cannot – perform any work after I restart or log off a GDIT computer.  I have had this same understanding throughout my employment at GDIT.

7.      I typically arrive at the call center about 30-minutes before my shift is scheduled to begin because I rely on family members to get me to work.  I don't enter the call center until

about 5-minutes before my start time. After I enter, I go to my locker to leave my personal things and to retrieve my headset and then I go to my desk. I do not sit down at my desk until a few minutes before shift starts.

8.      I store my personal items in a locker provided by GDIT. I am not allowed to have any paper, electronics or personal items at my desk due to the sensitive nature of the information to which I have access. All of my work is done on the computer and the phone, and I cannot take any calls or do any work before I am logged into the computer, as all the scripts I used to handle calls are stored in the production environment on my computer, which is called NGD.

9.      After I sit down at my desk, the next thing I do is log onto my computer using my ID and password. Generally, I do not have to boot up or turn on my computer, and instead just have to move the mouse to wake it up from "sleep" mode and log in.

10.     Occasionally, I am unable to log onto my computer because I have to change my password or have other system issues that prevent me from logging in. This has happened around five times in the last year. When this has happened, I have notified a supervisor, who has assisted me with logging onto the computer, and I always use the time I first attempted to log onto the computer as my start time.

11.     Once I log onto my computer, the Electronic Timekeeping System (ETS) system automatically enters the time I log into my computer and it is displayed on the ETS screen. ETS is where I record my time. At the end of the day, I am required to record my total time worked each day in the ETS system.

12.     I regularly review the time the system records when I log into my computer and believe it accurately reflects the time I log into my computer.

13.     Each day in which I work more than four hours, I take an unpaid meal break and two pad rest breaks. I take a full, 30-minute uninterrupted meal break away from my desk and work area.

14.     About 2-minutes before my shift ends, I enter an AUX code on the phone that makes it inactive to prevent any further incoming calls. When I finish my last call, I close out of my scripting and log out of the phone system. I go into ETS, review my time card, and enter my total time worked and allocate it to the appropriate project and task on which I am working. I deduct my unpaid meal break if I took one. In entering my total time worked, I estimate what time I will finish working based on how long it will take me to finish my time card and restart the computer.

15.     My desktop has a time calculator that allows me to enter my start time, end time, and my unpaid meal break to assist me in calculating my total hours worked per day. I am also trained how to calculate my time manually in tenth-hour increments.

16.     I restart my computer at the end of the day so that I (or someone else) can simply wake it up from sleep mode at the start of the next shift. I select the option that says restart and watch while the restart process occurs, which is really fast – usually less than 1-minute.

17.     The system automatically captures the time I restart my computer at the end of the day into ETS. I look at that time at the start of my next shift and believe it accurately reflects the time I restart my computer.

18.     If the computer time stamp system records more total time worked based on my log on and log-off/restart time than I record in ETS, the system prompts me to check my time and record the additional time. On the other hand, if I record more time in ETS than the computer time stamp system records based on my log-on and log-off/restart time, the system allows me to input that time and save my time card. If I did not tell my supervisor that I worked time beyond what the system recorded at the time it happened, my supervisor may ask me questions about my time to account for the difference.

19.     I believe my supervisor reviews my time card every day and approves my time card on a weekly basis. My supervisor may discuss or ask me to make changes to my time card, but I have to go into my time card and make the changes. My supervisor cannot actually make any changes to my timecard. If and when my supervisor has discussed changes to my time card with me, I have understood and agreed with those changes.

20.     Sometimes, I have to attend classroom training. When I attend training, I log onto a training computer. When I attend training, I understand that I am required to record all time I spend in training, including any time spent before I log onto a training computer.

21.     Immediately prior to the current timekeeping system, I recorded my time the same way, except the ETS system did not show my beginning and end of the day computer time stamps. Instead, my beginning and end of the day computer time stamps were captured and compared to the time worked that I recorded in ETS, and my supervisor was advised if the total time I recorded in ETS did not match the total time recorded by the computer time stamp system. In the instances when the time I recorded did not match the total time recorded by the computer time stamp system, my supervisor and I would work together to determine the accurate time worked.

22.     As with the current process, under this prior system, I understood that I was required to record all time worked, including time spent turning on my computer at the start of my shift and time spent on my end of day activities such as filling out my time card and restarting my computer.

23.     I have never been instructed that I need to come in prior to my shift to turn on my computer or get ready to get on the phones. I have never been instructed, or otherwise coerced or pressured by another employee, to not record all time that I worked. I have never been asked to work off-the-clock, nor have I done so.

24.     Throughout my employment, I have recorded all the time that I have worked and believe I have been properly paid for all hours worked.

25.     I do not work overtime hours.

26.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have read this Declaration and it is true and correct.

Executed on June 18, 2018 in Maricopa County, Arizona.

Blanca Zamora