IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTI FREEMAN and KIMBERLEY
SHOCKEY, individually and on behalf of
all others similarly situated,

                    **Plaintiffs,**

    v.

GENERAL DYNAMICS INFORMATION
TECHNOLOGY, INC.,

                    **Defendant.**
_____/

Case No. 8:18-cv-00855-CEH-TGW

## JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT AGREEMENT

Named Plaintiffs, CHRISTI FREEMAN and KIMBERLEY SHOCKEY, as well as Opt-in Plaintiffs[1] (collectively "Plaintiffs"), and Defendant, GENERAL DYNAMICS

---

[1] As of the date of the parties agreement to settle this case, 180 Opt-In Plaintiffs have joined the case by filing Notices of Consent to Join: Devina Mills, Jocelyn Cayard, James Finnemore, Kathleen Flick, Steven Skinner [D.E. 1]; Tamara Alfred, James Baker [D.E. 7]; Carolyn Johnson Denver [D.E. 8]; Lafiera Burr [D.E. 17]; Tosca Black, Maria Rodriguez, Patricia Bailey [D.E. 20]; Felicia Cargill, Fannie Gutierrez [D.E. 21]; Ykela Hackworth [D.E. 23]; Shamara Balentine, Vivian D. Brevard, Roylana Brewton, Linda Carter, Kelvin Conway, Meshia Daniels, Joseph Elmore, Anna Flemmings, Quanesha Ford, Don Freeman, Kisha Howard, Pamela Ingram, Tonya Jackson, Hayley Jefcoat, Linton Koch, Precious Longmire, Venus Nelson, Tracy Pannell, Stella Payton, Jerry Portis, Adrian K. Powe, Fontella Robinson, Tevin Robinson, Alisha K. Ross, Carolyn Shafer, Keva Woods [D.E. 24]; Akeem Taylor [D.E. 25]; Siketha Walker-Martinez, Candice Anderson [D.E. 26]; Henren LaShalle Walker [D.E. 27]; Joewanda Roberts, Marian Garner [D.E. 28]; Cynthia Johnson, Tarance Sharp [D.E. 30]; Le'Shantaisha Finley, Maria Salinas [D.E. 31]; Tiffany Medlock, Shandricka Rogers [D.E. 37]; Tierynee Chadwick; Carol Deams, Yasmine Evans, Lula Finley, Yvonne Gonzalez, Jessica Goode, Brianna Hardin, Raven McDonald, Tichina McKinney, Shawnequa Norwood, Travis Scott, Jermaine Stubblefield [D.E. 39]; Markeith Blackshear; April Craven-Thompson, Matthew Dugger, Lakisha Saloane [D.E. 40]; Stephany Loredo, Keyashia Maleddie, Latocha Marshall, Natasha Simmons [D.E. 41]; Landon Franklin, Dontavia Haliburton, Udana Howard, Jeremaine Smith [D.E. 42]; Angela Bankhead, Teresa Fulton, Mariah Nichols [D.E. 43]; Deshanique Hall-Alexander, Alexis Holmes, Marviona Powell, Shaniquia Majors [D.E. 44]; Hector Castro [D.E. 45]; Simon Alexander [D.E. 46]; Michelle McLeod, Suzane Ritchie [D.E. 47]; Cherria Gamble [D.E. 48]; Amber Hernandez [D.E. 49]; Diane Kalina [D.E. 50]; Noelle Townsend [D.E. 51]; Jerri Ledford, Amanda Stewart [D.E. 52]; Karizma Minnitt [D.E. 53]; Andra Quiram [D.E. 55]; Kristina Hatfield [D.E. 56]; Nicole Sims [D.E. 59]; Anitra Clark, Jazmine Hahn, Angelica Whipper [D.E. 60]; Myhisha Howard [D.E. 61]; Glenda Harley, Natrona Price [D.E. 62]; Clifton Pollock, Roy Wingfield [D.E. 65]; Melinda Thompson [D.E. 68]; Janet Sawyers [D.E. 69]; Alice Velazquez [D.E. 70]; Meghan McGuire [D.E. 71]; Catricia Myers [D.E. 72]; Kazavier McGilberry, Corlaysha Wilson [D.E. 74]; Lakira Osgood [D.E. 75]; Raven Denham, Gracie Hathorn, Lacreita Trotter, Likita Wesley, Jequetta Dean, Sedarick Turner, Kristen Conner, Cicely Gillispie [D.E. 78]; Brandon Heersink Peguero, Cynthia Speed [D.E. 79]; Linda L. Nelson [D.E. 81];

INFORMATION TECHNOLOGY, INC., ("General Dynamics" or "Defendant"), through their undersigned counsel, jointly move for the Court to approve the settlement reached by the parties in this suit instituted under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et. seq. ("FLSA"), and in support thereof, state:

## BACKGROUND

1. On April 10, 2018, Plaintiff Devina Mills filed a Collective Action Complaint alleging violations of the FLSA on behalf of herself and similarly situated Customer Service Representatives ("CSRs"). D.E. 1. Specifically, Plaintiff Mills alleged that General Dynamics maintained a common unlawful policy for failing to pay CSRs for time spent prior to becoming "call ready" for the start of their shifts. This included the time spent booting up and logging into their computer systems, loading essential desktop applications, reading and reviewing emails and the daily calendar, and logging into the company phone system. Plaintiff Mills alleged that Defendant required CSRs to complete all of these tasks before logging into the company's timekeeping system.

2. On July 13, 2018, Plaintiff moved for leave to file a Second Amended Complaint to replace Plaintiff Devina Mills with Plaintiff Alice Velazquez as Named Plaintiff in the instant action. D.E. 86. While Plaintiff's Motion for Leave to Amend her Complaint to replace Devina

---

Nayirah Hartfield [D.E. 82]; Barbara Pity [D.E. 84]; Consuelo Concepcion, Shashuna Moffett [D.E. 85]; Trina C. Thompson [D.E. 87];Nicholas Fairley, William E. Morris, Jr. [D.E. 90]; Rochanee Sanders, Mary Scott [D.E. 91]; Jassmyn Averett [D.E. 94]; Briana McLemore [D.E. 96]; Shonda Parker [D.E. 99]; Sandra Green, Andrea Thomas [D.E. 100]; Amanda Hagler [D.E. 106]; Trineicia Coleman [D.E. 107]; Brittany Bickham [D.E. 108]; Cacia Moffett, Meossiha Young [D.E. 110]; Briana Dodd, Michelle O'Berry [D.E. 111]; Meghan Williams [D.E. 113]; Tiffany Gordon [D.E. 114]; Shondricka Asberry, Tmarian Walker Webb [D.E. 115]; Erica Boswell [D.E. 119]; Lacricia Bethea, Tracey Goode [D.E. 121]; Michael Bigelow [D.E. 126]; Justin Brown [D.E. 130]; Rebecca Chatman, Ellen Coleman [D.E. 133]; Shakyla Robinson [D.E. 136]; Faith Magee [D.E. 139]; Casey Newell [D.E. 143]; Kimberly Baylis, Chentera Rena Mayes, Portia McNary [D.E. 144]; Angel Thomas [D.E. 145]; Fallon Law [D.E. 146]; Natasha Neal [D.E. 147]; Tierrany Ray [D.E. 148]; Jasmine Holder [D.E. 149]; Lanette Olivorivera [D.E. 150]; Almeta Seals [D.E. 157]; Cheryl Demar [D.E. 161]; Kierstin Cowart [D.E. 162]; Dayschannel Odomes, Summer Owens [D.E. 163]; Kiwanis Denham [D.E. 164]; Raven Washington [D.E. 165]; Yvonne Johnson [D.E. 166]; Tracy Williams [D.E. 167]; Angela Watts [D.E. 170].

Mills with Alice Velazquez was pending, Plaintiff voluntarily withdrew this Motion [D.E. 127], and instead filed a Motion for Leave to Amend to replace Devina Mills with Christi Freeman and Kimberley Shockey.  D.E. 128.  On December 3, 2018, this Court granted Plaintiffs' Motion for Leave to File a Second Amended Complaint, replacing Plaintiff Mills with Plaintiffs Freeman and Shockey [D.E. 151], and Plaintiffs subsequently filed a Second Amended Complaint on December 3, 2018.  D.E. 152.

3.   Defendant filed its Answer and Affirmative Defenses to the Second Amended Complaint.  D.E. 156.  Defendant's principal defenses to the Complaint were that Plaintiffs were compensated for all hours worked and/or failed to work more than 40 hours in a week.  Further, Defendant contended that it maintained adequate and appropriate timekeeping policies and procedures with which Plaintiffs failed to comply.  In addition, Defendant maintained that Plaintiffs' claims should be barred as their claims are *de minimus*.  Defendant further contended should Plaintiffs prevail on their overtime claims, Plaintiffs should not receive liquidated damages because Defendant acted in good faith and with reasonable grounds for believing that they properly paid Plaintiffs for all hours worked.

4.   On July 19, 2018, Plaintiffs filed Plaintiffs' Motion for Conditional Certification which sought to send notice of this lawsuit to all CSRs employed by Defendant from three years prior to the filing of the Complaint until July 31, 2017.  D.E. 89.

5.   On August 21, 2018, the parties participated in a full-day mediation before experienced wage and hour mediator Jeffrey Grubman, Esq.  D.E. 129.  While the mediation did not result in a settlement, the parties continued to engage in settlement dialogue throughout the litigation of this action.

6. On December 4, 2018, this Court, *sua sponte*, denied as moot Plaintiffs' First Motion for Conditional Certification, because the Second Amended Complaint superseded the first, and ordered Plaintiffs to renew their motion on or before December 11, 2018. D.E. 153; D.E. 154. Plaintiffs filed the same on December 10, 2018. D.E. 155.

7. In response to Plaintiffs' Renewed Motion for Conditional Certification, Defendant submits that it showed that it properly paid CSRs and provided evidence suggesting that its timekeeping system did not change on July 2017 as Plaintiffs alleged, but in June/July 2016. D.E. 159 at. p. 4-5.

8. On April 9, 2019, this Court held a hearing on Plaintiffs' Renewed Motion for Conditional Certification. D.E. 174. No decision on Plaintiffs' Renewed Motion for Conditional Certification has yet been made by the Court.

9. To reach this settlement, the parties evaluated the factual disputes and legal issues, and evaluated the risks both parties faced, including: (a) whether Defendant in fact maintained an unlawful timekeeping policy that failed to compensate Plaintiffs for all hours worked; (b) whether Defendant's allegedly unlawful timekeeping policy was fixed in June/July 2016 or July 2017; (c) whether Plaintiffs' damages are *de minimus*; (d) whether Plaintiffs regularly worked overtime, and the amount of damages Plaintiffs could likely prove; (e) whether this action was appropriate for conditional certification of an FLSA collective; (f) if this action was appropriate for conditional certification of an FLSA collective, whether any members of the putative collective would have claims that were not time barred due to Defendant's change in its timekeeping system; (g) if the Court granted conditional certification, whether the case would be ultimately decertified after the parties spent significant money on merits discovery; and (h) if

Plaintiffs were not paid overtime wages required by law, whether Defendant lacked good faith bases for failing to pay overtime, warranting an award of liquidated damages to Plaintiffs.

10. The negotiations were hard fought and lasted nine months. Both parties fiercely believed that the facts and law supported their positions. Notwithstanding, the parties worked hard to try to reach common ground and, on May 10, 2019, reached a settlement of the claims at issue.

11. Thereafter, the parties negotiated the terms of the written settlement agreement which was signed by the parties on August 7, 2019.

12. The settlement resolves the claims for Plaintiffs who joined the case to date. Under the terms of the settlement agreement, Defendant will pay a gross settlement of $170,000.00, inclusive of service awards to the Named Plaintiffs and attorneys' fees and costs. After deducting the service awards, minimum payments, and attorneys' fees and costs from the gross settlement amount, Defendant will thereafter pay each Plaintiff from the net amount remaining ("net settlement amount") a settlement for alleged unpaid overtime wages. Each Plaintiff will receive a minimum payment of $50.00. Thereafter, each Plaintiff will receive their share of the remaining net settlement amount.

13. The remaining net settlement amount will be distributed by allocating one point for every workweek that a Plaintiff worked in the relevant period over 38.33 hours.[2] Each workweek has a settlement value of $19.25. The settlement value for each workweek is a fair representation of Plaintiffs' actual weekly damages. Plaintiffs earned between $8.55/hour and $13.50/hour as CSRs during the relevant period and claimed to have worked about 50 minutes to

---

[2] Because Plaintiffs allege that the pre-shift worktime took approximately 10-20 minutes per shift, the parties agreed that in order to have been eligible to receive overtime pay, a Plaintiff would have had to work at least 38.33 hours in that week. This ensures that by adding in the unpaid and unrecorded time the Plaintiff would still reach the overtime threshold such that the work would have been compensable under the FLSA.

an hour and 40 minutes per week without pay. Using an average of $11.00/hour and $16.50/hour as the average overtime rate, Plaintiffs' weekly unpaid overtime damages ranged from $13.70 (for 50 minutes of unpaid time) to $27.56 (for an hour and 40 minutes of unpaid time), resulting in an average weekly damages amount of $20.63. This settlement of $19.25 per week (plus an additional $50.00 for all Plaintiffs) is very fair and close to the Plaintiffs' actual damages claimed in this case.[3] This settlement amount is particularly fair because Defendant argued that there was no unpaid time at all.

14. Based on the points accumulated for each Plaintiff, each Plaintiff will thereafter receive a proportional share of the net settlement amount in addition to his or her minimum payment. For example, if a Plaintiff had 10 points and the total sum of all points for all Plaintiffs was 100, then that Plaintiff would receive 10% of the remaining net settlement fund.

15. From the gross settlement fund, Plaintiffs' Counsel will receive payment for a portion of their attorneys' fees and reimbursement of all costs. During this hard fought litigation, Plaintiffs' Counsel incurred over $288,000.00 in attorneys' fees. Plaintiffs' Counsel prepared pleadings, interviewed all of the 182 clients about their unpaid wage claims as well as many other potential Plaintiffs, obtained declarations from 20 clients to support Plaintiffs' Motion for Conditional Certification, performed legal research into the compensability of the preliminary work Plaintiffs performed without compensation, researched whether Defendant's *de minimis* defense had merit and could potentially bar Plaintiffs' claims, performed the legal research necessary to draft Plaintiffs' Motion for Conditional Certification and prepared for the oral

---

[3] The settlement workweek value takes into account the variations in hours worked per week by the Plaintiffs. For example, if a Plaintiff worked 38.5 hours in a particular week and that Plaintiff typically worked an hour and 40 minutes off-the-clock in a week, then that Plaintiff would only have 10 minutes of unpaid overtime in that week. Assuming that Plaintiff earned $11.00/hour, that Plaintiff's unpaid overtime damages for that week would only be $2.75. Based on the terms of the settlement agreement, that Plaintiff would still recover approximately $19.25 for that week, despite only working approximately 10 minutes of overtime in that week.

argument on same, prepared for and argued on Plaintiffs' Motion for Conditional Certification, prepared discovery requests, prepared responses and objections to Defendant's discovery requests, analyzed and prepared damages calculations, drafted a mediation position statement and researched law to support it, attended mediation, engaged in complex settlement negotiations, and prepared settlement documents and this Motion.

16. Additionally, Plaintiffs' Counsel incurred $13,355.97 in taxable costs for the case which included the filing fee, service of process on each defendant, travel and lodging expenses for out of state counsel's attendance at mediation, travel to the oral argument on Plaintiffs' Motion for Conditional Certification, court transcript costs, travel to meet with clients to discuss their claims, and Plaintiffs' portion of the mediation fee.

17. In order to facilitate settlement and ensure Plaintiffs received timely payment which would not have occurred had there been a litigation about fees and costs between Defendant and Plaintiffs' Counsel, Plaintiffs' Counsel agreed to accept a significant discount on their incurred fees and costs by stipulating with Defendant that Plaintiffs' Counsel will seek no more than $90,000.00 in attorneys' fees and costs.

18. The Parties, who were both represented by experienced Fair Labor Standards Act collective action counsel, agree that the settlement reached between the Parties represents a fair resolution of Plaintiffs' FLSA claims, as well as Plaintiffs' reasonable attorneys' fees and costs. As was made clear at the oral argument on Plaintiffs' Renewed Motion for Conditional Certification, the parties fiercely disputed their adversary's position and a *bona fide* dispute existed as to whether Plaintiffs were owed compensation for their preliminary work or whether Defendant's *de minimis* defense and defense that it properly trained Plaintiffs to record all their time would bar Plaintiffs' claims. This settlement eliminates the uncertainty that both sides

faced if this case proceeded through trial and also conserves resources of the parties and the Court. If a settlement was not achieved, the Parties were preparing for at least 30 depositions, hundreds of discovery responses, and a substantial and costly production of ESI. This settlement represents a fair compromise and a just resolution of these claims.

19. In exchange for the service awards, each Named Plaintiff will provide a general release of all claims (except those which cannot be released by law) through the date of the settlement agreement. Each other Plaintiff will release his or her unpaid wage claims against Defendant under the FLSA and applicable state or local wage and hour laws.

## MEMORANDUM OF LAW

Pursuant to Eleventh Circuit precedent, judicial review and approval of an FLSA settlement involving a compromise provides final and binding effect. *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982). As the Eleventh Circuit held in *Lynn's Food*,

> "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them . . .
>
> The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness."

*Id.* at 1352-53.

In accordance with *Lynn's Food*, the Court's review of the settlement is to determine if the settlement is "a fair and reasonable resolution of a bona fide dispute." *Id*. at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court should approve the settlement "in order to promote the policy of encouraging settlement of

8

litigation." *Id.* at 1354. In determining whether the settlement is fair and reasonable, the Court may consider the following factors:

(1) the existence of fraud or collusion behind the settlement;
(2) the complexity, expense, and likely duration of the litigation;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the probability of plaintiffs success on the merits:
(5) the range of possible recovery; and
(6) the opinions of counsel.

*See, e.g., Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Hamilton v. Frito-Lay, Inc.*, No. 6:05-cv-592, 2007 U.S. Dist, LEXIS 10287, at *2-3 (M.D. Fla. Jan. 8, 2007). The Court should be mindful of the strong presumption in favor of finding a settlement fair. *Hamilton*, 2007 U.S. Dist. LEXIS 10287, at *2-3.

## I. **This Settlement Fairly Resolves Heavily Disputed Claims and Should be Approved.**

As to the first *Leverso* factor, there was no fraud or collusion behind the settlement. The Parties litigated this case and reached a settlement after a litigating for more than a year. The Parties voluntarily agreed to this settlement after due consideration by both Plaintiffs and Defendant and after extensive investigation, litigation, and arms-length negotiations.

As to the second *Leverso* factor, this litigation likely would have lasted two to three more years if this settlement was not reached. Given the extent of discovery which was forthcoming at the time this settlement occurred, the Parties would have had to spend hundreds of thousands of dollars litigating these claims. There would have been 30 or more depositions, hundreds of discovery responses from the 182 Plaintiffs, a substantial production of ESI showing various data points to recreate when Plaintiffs performed work, discovery into Defendant's affirmative defenses and likely privilege waiver battles about its good faith affirmative defense, travel to various locations throughout the country where the witnesses lived to conduct and defend depositions, and substantial motion practice related to decertification, summary judgment, and experts who likely would need to be used

9

to recreate the time Plaintiffs (allegedly) worked off-the-clock. Based on Plaintiffs' Counsel's prior experience litigating similar cases, Plaintiffs' Counsel expected to spend at least $500,000 more on attorneys' fees and another $200,000 in costs each if this case did not settle. These estimates do not include costs and fees necessary for a collective action trial and any appeals.

As to the third *Leverso* factor, the parties litigated the case for more than a year when settlement was reached. The parties exchanged a lot of information and documents and their claims and defenses were addressed in motion papers filed in the litigation. All parties had substantial knowledge of the claims and defenses and the information relating to same to evaluate the risks of additional litigation. One issue which impacted Plaintiffs was, even if they won their Motion for Conditional Certification, the statute of limitations for the collective members likely would have passed if Defendant actually did change its timekeeping practice in June/July 2016, because each of the collective members would have received notice of this lawsuit more than three years after Defendant's change.

As to the fourth *Leverso* factor, while Plaintiffs believed in their claims and that Defendant failed to pay them for all time worked, Plaintiffs faced risks. Defendant argued that it trained Plaintiffs to record their time properly and had no knowledge of the unpaid time because Plaintiffs entered their time and Defendant paid the time entered. Defendant also argued that, even if Plaintiffs worked any unpaid time, the amount at issue was so minimal that it was *de minimis*. While Plaintiffs disagreed with Defendant's legal position and made arguments to the contrary, Plaintiffs may not have prevailed on the claims or won a lesser amount than that which was achieved through this settlement.

As to the fifth *Leverso* factor, as noted above, Plaintiffs are all receiving $19.25 for each workweek in which they worked over 38.33 hours or more during the relevant period, as well as a minimum payment of $50.00 each. Under Plaintiffs' best case scenario, their actual average weekly

damages amount is $20.63. A settlement of $19.25 per workweek plus the $50.00 minimum payment fairly compensates Plaintiffs for their claimed unpaid time.

As to the sixth *Leverso* factor, all counsel support this settlement. Plaintiffs' and Defendant's counsel have substantial experience litigating Fair Labor Standards Act collective actions and believe that this settlement resolves a *bona fide* dispute in a very fair way. Plaintiffs' Counsel collectively has approximately 60 years of experience combined litigating these cases and recognizes that, even when we think we have the better legal position, litigation is uncertain and could go against our clients. Plaintiffs' Counsel especially support this settlement because the workers at issue are low income earners and the money to be obtained through this settlement will be meaningful.

## II.     The Court Should Also Approve Plaintiffs' Attorneys' Fees and Costs.

As often occurs in Fair Labor Standards Act cases where the unpaid wage damages are relatively nominal, Plaintiffs' Counsel's attorneys' fees and costs exceed the damages at issue. *See King v. My Online Neighborhood, Inc*., 2007 U.S. Dist. LEXIS 16135 (M.D. Fla. Mar. 7, 2007) (approving a settlement that provided $4,500 to the plaintiffs and $10,500 for attorney's fees and costs); *Stewart v. Great Ir. Pubs Fla., Inc*., 2014 U.S. Dist. LEXIS 180656, at *6 (M.D. Fla. Dec. 17, 2014) (approving a settlement that awarded $500 to the named plaintiff, $200 to two opt-in plaintiffs, and $5,000 for attorney's fees and costs). Here, Plaintiffs' Counsel represented Plaintiffs on a full contingency basis and spent over 818 hours litigating this case without payment for Plaintiffs. Plaintiffs' Counsel's incurred attorneys' fees are $288,000.00 and costs are $13,355.97. Palitz Decl. at ¶ 13; Kessler Decl. at ¶ 6, 7. A settlement of the fees and costs of $90,000.00 is reasonable given the work Plaintiffs' Counsel performed and the costs they expended without any compensation or guarantee of future repayment.

The amount to be paid to Plaintiffs' Counsel is actually approximately 69% less than their actual incurred fees and costs, which demonstrates that Plaintiffs' Counsel are not being overly compensated for their time. Plaintiffs' Counsel elected to settle for a reduced amount to facilitate this settlement and ensure timely payment to their clients. In this matter, Plaintiffs' Counsel is not seeking to recover anything more from the Plaintiffs beyond the amounts Defendant will pay through this settlement.

WHEREFORE, CHRISTI FREEMAN and KIMBERLEY SHOCKEY, as well as Opt-in Plaintiffs who have joined this case to date, and Defendant, GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC., respectfully request that this Court: (a) find their settlement agreement fair and reasonable; (b) approve the settlement; (c) dismiss this action with prejudice; and (d) grant any other relief the Court deems just.

Respectfully submitted this 7th day of August, 2019.

s/Gregg I Shavitz                    s/Gregory W. Kehoe

Gregg I. Shavitz
gshavitz@shavitzlaw.com
Logan A. Pardell
lpardell@shavitzlaw.com
SHAVITZ LAW GROUP, P.A.
951 Yamato Road, Suite 285
Boca Raton, Florida 33431
Tel: (561) 447-8888
Fax: (561) 447-8831

Michael J. Palitz*
mpalitz@shavitzlaw.com
SHAVITZ LAW GROUP, P.A.
800 3rd Avenue, Suite 2800
New York, New York 10022
Tel: (800) 616-4000
Fax: (561) 447-8831

Troy Kessler*

Gregory W. Kehoe, Esq.
Florida Bar No. 0486140
Email: kehoeg@gtlaw.com
Catherine H. Molloy, Esq.
Florida Bar No. 0033500
Email: molloyk@gtlaw.com
Tristan J. Reiniers
Florida Bar No. 0119358
Email: reinierst@gtlaw.com
GREENBERG TRAURIG, P.A.
101 E. Kennedy Boulevard, Suite 1900
Tampa, FL 33602
(813) 318-5700 – Telephone
(813) 318-5900 – Facsimile

and

Christine E. Howard, Esq.
Florida Bar No. 872229

12

tkessler@shulmankessler.com
Garrett Kaske*
gkaske@shulmankessler.com
Tana Forrester*
Tforrester@shulmankessler.com
SHULMAN KESSLER LLP
534 Broadhollow Road, Suite 275
Melville, New York 11747
Tel: (631) 499-9100
Fax: (631) 499-9120

*Attorneys for Plaintiffs and the Putative FLSA Collective Members*

Email: choward@laborlawyers.com
FISHER PHILLIPS LLP
101 E. Kennedy Blvd., Suite 2350
Tampa, FL 33602
(813) 769-7500 – Telephone
(813) 769-7501 – Facsimile

*Attorneys for Defendant*

\* admitted *pro hac vice*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was furnished to the below-named attorneys for Defendant on this 7th day of August 2019 by notification through the Court's electronic case filing system:

GREENBERG TRAURIG, P.A.
Gregory W. Kehoe, Esquire
Email: kehoeg@gtlaw.com
Katie Molloy, Esquire
Email: molloyk@gtlaw.com
101 E. Kennedy Blvd., Suite 1900
Tampa, Florida 33602
Telephone: (813) 318-5700

FISHER PHILLIPS LLP
Christine E. Howard, Esquire
Email: choward@laborlawyers.com
101 E. Kennedy Blvd., Suite 2350
Tampa, Florida 33602
Telephone: (813) 769-7500

s/Gregg I. Shavitz
_____